LOTTINGER, Judge.
This is a suit for the expropriation of 155.956 acres of land zoned for heavy industrial use. The title of the land was vested by stipulation of counsel and the only question before the Lower Court was market value of the property to be expropriated. The date of taking was stipulated as August 15, 1969, as such was the date possession was taken by the city.
The subject property falls into several categories. There are 68.211 acres on a bluff having an elevation of approximately 70 feet and 87.745 acres of land from the bluff line to the center line of the Baton Rouge Harbor Canal. Of the bluff land, 4.82 acres are subj ect to a railroad and pipeline servitude and in the low land 17.502 acres are burdened by the Baton Rouge Harbor Canal and its right-of-way.
The bluff land is above the high water level of the Mississippi River and has never flooded. This property is considered to be within the 70 foot contour level. The remaining land is that property below the bluff line which can be expected to flood periodically.
The property expropriated is bounded on the east by Kansas City Railroad right-of-way and has 1516.20 feet front on said railroad. It is bounded on the north by the Thomas Road with a frontage of 1102.90 front feet. On the south it is bounded by Sapsucker Road with frontage of 600 feet. On the west it is bounded by the right-of-way of the Baton Rouge Harbor Canal on which the frontage is 1695.42 feet. Immediately to the north, is the Foster Grant plant and north of that is U. S. Rubber, then the old W. R. Grace plant.
The property is located in a heavy industrial area. All the appraisers who testified were in agreement that the highest and best use for the property was heavy industrial.
The property is just north of Scotland-ville and is easily accessible from U. S. Highway 61 although the property does not technically front on said highway. The property is easily accessible, however, to Highway 61 by Thomas Road and Sapsucker Road. At the time of the taking, Thomas Road was a gravel road as was Sapsucker Road. At the northeast corner of the property, there was Nickwack Cemetery comprising 2.556 acres. Also, the city owned approximately 5 & l/^ acres which it had previously purchased from the defendant on which it operated an incinerator which, however, was abandoned prior to the taking. A rendering plant was situated on the south side of Sapsucker Road.
There were three appraisers who testified on behalf of the city, namely John Allphin, J. Clifford Doiron, and Daryl Willet. On the other hand, there were two appraisers on behalf of the defendant, namely Heidel Brown and Berdie Reece Perkins.
Mr. Allphin’s estimate of fair market value for the subject property was $251,-176.00 as of July 9, 1969. He testified that he made his appraisal without the benefit of *133 actual acreage figures and that he upgraded his estimate of value after he had received the engineer’s survey which showed additional acreage which he did not originally take into consideration. His ultimate estimate was $319,150.00. Mr. Doiron’s estimate of fair market value was $273,200.00, while Mr. Willet’s estimate was $250,000.00. On the other hand, Mr. Brown’s estimate of fair market value was $611,111.00 while Mr. Perkins’ estimate was $585,943.00. With regard to the wide variation as to the value placed on the property by petitioner’s witnesses as against defendant’s witnesses, the Lower Court said:
“The gap between these estimates is almost as wide as the difference between the bluff land and the low land in this case. Very frankly, the court was quite perturbed that 5 reputable appraisers could have such a disparity in their valuations for the same piece of property.”
The valuations placed on the bluff land ranged from a low of $3,500.00 per acre by Messrs. Doiron, Allphin and Willet to a high of $5,100.00 per acre by Mr. Brown. Mr. Perkins valued the bluff land at $4,-800.00 an acre. In setting a price of $4,-500.00 per acre on the 63.391 acres of the unburdened bluff land, and $2,000.00 per acre for the 4.820 acres of bluff land burdened with servitudes, the Court said:
“The Court inspected all of the compara-bles used by the various appraisers for their bluff land estimates. It felt that the General Realty, the Stupp Brothers and the Sutter to Carter sales were most comparable to subject property. In 1962 a considerable portion of Sutter to Carter property was inundated because of the flood and additionally Cypress Bayou meanders through the northern portion of the property. The Court feels that this bayou is almost as detrimental to the property as the ravine which traverses the southeastern portion of the bluff land. None of the comparables have canal frontage. If the subject bluff land were for sale without the low land very clearly it would be almost comparable to the three properties in question. Accordingly it becomes the Court’s duty to determine whether or not a premium should be placed on the bluff land because it is connected with the low land. Both the bluff land and the low land would suffer in value if they were not connected but this is one piece of property with two rather distinctive contour levels and must be accepted as such. The Court felt that in considering the property as a whole it would definitely be advantageous to an industrial purchaser to have both high land and low land in one piece such as subject property. As was so forcefully argued by counsel for defendants this whole property has rail frontage, canal frontage and road frontage. Industries are looking for transportation to get raw materials to the plant and finished goods to the market. Subj ect property had ideal transportation potentials. This factor cannot be overlooked by the Court and as such was a big plus factor when these three other comparables were considered. None of these comparables had canal frontage. The Court felt that in every other respect said comparables were superior to subject property, especially in terrain and road accessibility. Additionally, the adverse factors of an incinerator on the north, a rendering plant on the south, two poor gravel roads, and a cemetery at the corner of the property were absent from the comparables.
Taking all of these factors into consideration the Court feels that the estimate made by Mr. Perkins as to the subject’s values bluff land was the most reasonable but slightly high. The Court places a value of $4,500 per acre on the 63.391 acres of the unburdened bluff land which generates a total of $285,273.00. Additionally for the servitude land Mr. Perkins placed a value of $2,000 per acre which the Court accepts and which generated a total of $9,640.00. Accordingly for the 68.211 acres on the bluff the Court fixed fair market value to be $294,913.-00.”
*134 It is interesting to note, however, the comments of the Lower Court with regard to the testimony of Mr. Brown, as follows:
“The Court feels that it must comment on the testimony of Heidel Brown because it was indeed impressed with the comments he made about industry and its location in the immediate area. Several of the points he made were taken into consideration by the Court in placing its value on the bluff land. There’s no doubt that subject property is located in the heart of the industrial complex of North Baton Rouge and location is indeed a prime consideration in the decision of industry to locate on the tract. This means that natural gas and its derivatives principally ethylene, are available to subject property through the pipe lines just east of subject property in the servitude area. Additionally subject property has rail connections and is within the switching limits of the railroad. Additionally it has frontage on the Harbor Canal with the right to build docks on the canal. Mr. Brown emphasized time and again that there was no other property available on the canal. These factors motivated the Court to place a value of $4,500 per acre to the bluff land even though the Court considered said property to be very rough in many respects. These factors help neutralize the detrimental influence of Thomas Road and Sapsucker Street, the rendering plant on the south, the incinerator on the north and the cemetery in the northeast corner and the ravine along the southeastern property line.”
With regard to the cemetery comprising 2.556 acres, the Lower Court held that the fact that the graves protruded into the original servitude of the Thomas Road was a definite detriment to the property. Counsel for the parties, however, stipulated that Thomas Road has always been located on the ground at its present location, that is, partially on the right-of-way acquired in 1940 for Thomas Road and the remaining part of the Foster Grant property. Thus this road has been located in its present location, used and worked by the public since 1940. In law, this resulted in the acquisiton by the public of Foster Grant land and the road being used of the full width as it presently exists on the ground and, therefore, this servitude for Thomas Road is now public.
The second detriment cited by the Lower Court, i. e., the incinerator, was shut down on August 15, 1969, and has long since ceased to be used for such purposes.
Although the Lower Court also held the rendering plant which is on the north side of Thomas Road, adjoining the plant of Foster Grant, a detriment, the evidence reflects that it was there long before Foster Grant moved in as its neighbor, and was, apparently not then considered a detriment. With regard to the “large trees, undergrowth and bushes on the bluff land” which was also cited as a detriment by the court below, Mr. Munson, based on his experience, estimated the cost of clearing same to be only at $200.00 per acre.
We feel that the comparable used by the Lower Court in fixing its price on the bluff land was not as well situated for heavy industry as is the subject land. The sale to General Realty made in 1969, was of 131 acres at $4,250.00 an acre. This tract did not have barge canal frontage and did not have a road across the railroad to get to Scenic Highway, even though the tract included the land subject to the railroad servitude. The Stupp Brother’s sale made during 1967 was of 80.441 acres at $5,000.00 an acre. This tract likewise did not have barge canal frontage and besides had problem with its railroad access. The sale from Sutter to Carter during 1968 was of two separate tracts containing 41,809 acres at $5,000.00 per acre. This tract also did not have barge frontage and was traversed by Cypress Bayou.
Mr. Heidel Brown used these three sales in giving his appraisal. He adjusted the General Realty sale to $5,100.00 an acre for the bluff land because of the fact that the subject property had barge canal frontage, *135 had two access roads to Scenic Highway, via Thomas Road and Sapsucker Road whereas General Realty neither had canal frontage nor did it have crossings already constructed over the railroad and pipeline. He stated that the subject property was better than the General Realty property because General Realty is further north and did not have entrance into the property and, furthermore, that industry or major industry “. . . really want water or access to water if they can get it.” He testified that of a list of 24 sales which he inspected to major industry, only four were not on water. Mr. Brown adjusted the General Realty sale at 20% for lack of water and thus reached a figure of $5,100.00 per acre for the subject property.
With regard to the Stupp Brother’s sale, Mr. Brown testified that the 80.441 acres of high land, which is not water served, sold for $5,000.00 per acre. Adjusting it for water would fix its value at $6,000.00 per acre. As General Realty property was nearer to subject and more recent, Brown weighed the Stupp Brother’s sale less than the General Realty sale.
In the sale from Sutter to Carter, there were two tracts totaling 41.809 acres for $5,000.00 per acre. West Cypress Bayou traverses one of the tracts and there is a wide drainage channel or borrow pit separating this tract from the railroad and Baker Road. Mr. Brown adjusted for size by downgrading this comparable to $4,500.-00 per acre then adjusted upward again 20% for the lack of canal frontage access to $5,400.00 an acre value for the subject property. He then concluded that subject’s highland had a value of $5,100.00 an acre. In reaching its conclusion, the Lower Court said:
“There’s no doubt that subject property is located in the heart of the industrial complex of North Baton Rouge and location is indeed a prime consideration in the decision of industry to locate on the tract. This means that natural gas and its derivatives principally ethylene, are available to subject property through the pipelines just east of subject property in the servitude area. Additionally, subject property has rail connections and is within the switching limits of the railroad. Additionally, it has frontage on the Harbor Canal with the right to build docks on the canal. Mr. Brown emphasized time and again that there was no other property available on the canal.”
We feel that the Lower Court has erred as to its valuation of the bluff land in not giving proper weight to the opinions based on the experience of the witnesses. Both Mr. Brown and Mr. Perkins had vast experience in selling industrial lands of the nature of the subject property. Neither Mr. Allphin, Mr. Doiron nor Mr. Willet, although they were qualified real estate men, had any experience with the sale of industrial lands according to their own testimony. Although Mr. Perkins had such experience, the record discloses that Mr. Brown was more qualified in this particular industrial area of Baton Rouge.
In Florida Gas Transmission Co. v. Munson, La.App., 198 So.2d 750, the Court said:
“In our opinion the testimony of defendant’s witnesses appear to be the most reasonable and logical and are entitled to greater weight than is the testimony of plaintiff’s witnesses. Our decision in this respect is based upon the fact that plaintiff’s witnesses, though recognized as competent appraisers otherwise admittedly did not possess the vast experience, know how and knowledge of the uses, development, potentials of industrial properties as did the witnesses of defendant. Plaintiff’s witnesses acknowledged that neither had ever handled the listing or sale of industrial property.”
We do not feel that the evidence substantiated that Thomas Road, Sapsucker Road, the rendering plant on the south, the incinerator on the north and the cemetery along the northeastern property line were *136 of such detrimental influence as found by the Lower Court. Considering the comparables used by Mr. Brown, and the apparent impression which he made on the Lower Court, we feel that his valuation of the unburdened bluff land represents the true market value of said land at the time of the taking and, therefore, the Lower Court should have used his value of $5,100.-00 per acre for the unburdened land.
With regard to the valuations on the low land, the Lower Court said:
“The low land was that acreage totaling 87.745 below the bluff. This property is subject to inundation from the Mississippi River annually and is in the 25 to 30 foot contour line.
Mr. Allphin used two comparables to arrive at his evaluation of the low land. He used the sale from Ragusa to Bol-ogne (D-15) dated 12-30-60 for 100 acres at $300 per acre. This property was zoned M-3 and was north of subject property and in the 30 foot evaluation. It was about )4 mile north of subject property. This property had no frontage on the barge canal but did front the Mississippi River. He also used the sale from Newman to Petro Processors, dated April 18, 1968 (P-14) for 196.54 acres at $350.00 per acre. It was in the 25 to 30 foot elevation and was approximately one mile north of subject property. It was not on the Barge Canal either. Using these two sales he arrived at $350 per acre for the low land. He assessed just a nominal value to that burdened low land which lies within the Baton Rouge Harbor Canal right-of-way.
Mr. Doiron using the same comparables as he used for his bluff property, namely P-26 and P-27, arrived at a valuation of $620 per acre for the unburdened low land and $310 per acre for the burdened low land.
Mr. Willet used the same two compar-ables as Mr. Allphin used for the low land namely Ragusa to Bologna and Newman to Petro Processors and arrived at $300 per acre for the unburdened low land. He just assessed a nominal value to the burdened low land.
Heidel Brown used the sale by Canal Development Company to Clark Marine of 31.9 acres at $2,000 an acre (D-5) as his only comparable for the low land. This sale was in 1960. This property bordered on the Harbor Canal but had no road or rail access. He adjusted it upward because of time to $3,000 per acre.
Mr. Perkins used the Clark Marine as his only comparable for the low land also. He felt that although the comparable was smaller in size than the low land of subject property all of it was subject to inundation. He adjusted it upwards only $500.00 and arrived at a valuation of $2,500 an acre for the unburdened low land. He valued the 7.5 acres which was part of the Harbor right-of-way at $1,500 an acre and the ten acres that were actually in the canal channel at $1,000 per acre.”
The Lower Court discounted the Clark Marine comparable saying: “ . that one sale cannot be criterion of market value because to do so would give you a monopoly market and no freedom of choice in a competition”. The Court then went on to say that although it felt the Clark Marine sale must be given some consideration because it is a fact, it certainly did not feel that it has established a fair market value for the property in the area.
There is another comparable filed in the record, however, that being the judgment dated September 30, 1959, in the expropriation suit entitled Greater Baton Rouge Port Commission vs. Bridge City Realty Company. In that case, the Court was concerned with the expropriation of 66.182 acres which were all below the bluff just as all of the 87.745 acres of low land here are below the bluff. The expropriated tract there forms a part of the northern *137 boundary of the property expropriated here. In that case, Mr. Heidel Brown was also a witness and he divided the land expropriated into three categories, viz.:
“Land owned in fee simple by Bridge City Realty Company and unencumbered (21.5 acres) valued at $41,740.75; land in right-of-way outside the canal cut (19.105 acres) valued at $28,575.00; and land in the canal cut (25.577 acres) valued at $7,673.00.”
Mr. J. Burrows Johnson, also an expert in that case, was slightly higher than Mr. Brown and the Judge averaged the two. The market value as fixed by the Judge in that case as of March 27, 1958 for the unencumbered land (without servi-tudes) was $1,940.49 per acre. The record discloses, however, that since that time, a much greater development had taken place in the area.
This expropriation judgment was offered in evidence by both parties and it supports the Clark Marine sale as a comparable.
The three appraisers for the City testified that the canal was of no importance. The record discloses that none of them had any experience in either buying or selling industrial properties either on this canal or elsewhere, and their opinions, therefore, were not based on actual experience.
We feel that the Lower Court should have awarded the sum of $2,500.00 per acre for the 70.243 acres of unburdened low land, $1,500.00 per acre for the 7.5 acres forming a part of the harbor right-of-way, and $300.00 per acre for the 10 acres in the Harbor Canal, or the total sum of $189,857.50 for the low land.
We, therefore, feel that the market value of the bluff land should have been $5,-100.00 per acre for the 63.391 unburdened acres and $2,000.00 per acre for the remaining 4.82 acres burdened by the railroad and pipeline servitudes. Therefore, the total consideration for the 68.211 acres of bluff land should have been $332,934.-10.
For the reasons hereinabove assigned, the judgment of the Lower Court will be amended so as to increase the award to the sum of $522,791.60, with legal interest thereon from August 15, 1969, until paid, subject to such credits as have been actually paid thereon under the provisions and terms of the judgment herein dated October 28, 1969; and, in accordance with said stipulation, as set forth in said judgment herein, dated October. 28, 1969, the vendor’s privilege and lien on the above described land is hereby recognized as retained by said Bridge City Realty Company, Inc. for the amount of this judgment. And, as so amended, the judgment of the Lower Court is affirmed. All costs of this appeal shall be paid by petitioner, as permitted by law.
Judgment amended and affirmed.