351 So.2d 1249 (1977)
Lucy Percy MADDOX
v.
Elena PERCY.
No. 11479.
Court of Appeal of Louisiana, First Circuit.
October 17, 1977.
Rehearing Denied November 21, 1977.
*1251 Alexis A. St. Amant, Baton Rouge, for plaintiff and appellant.
Ashton L. Stewart, Baton Rouge, for defendant and appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Plaintiff (Appellant) appeals from judgment ordering partition in kind of a 941.52 acre tract of rural land situated in West Feliciana Parish, which Appellant owns jointly with defendant (Appellee). Appellant's request for partition by licitation was rejected because the trial court found no merit in Appellant's contentions: (1) that the proposed division created tracts of unequal value and diminished the value of the land as a whole; and (2) that any division in kind will diminish the value of the land as a whole, because of its peculiar characteristics. We affirm.
The parties are sisters. They acquired the land by donation from their parents in 1965. The land is part of Ellersley Plantation which contained about 1150 acres before approximately 200 acres was severed from the plantation prior to the aforementioned donation. The tract is bounded south by Highland-Plettenberg Road (Highway), a paved two lane highway, and has a frontage of 5,716 feet on the north side of said Highway. On the north it is bounded by lands of Edward Percy, west by lands of C. Carter Percy, and east by the meanderings of Little Bayou Sara. Division into two tracts of equal value is rendered difficult by the presence of a ravine forming a natural dividing line between the northern and southern parts of the tract. The ravine runs from the eastern boundary on Little Bayou Sara, beginning about 2000 feet north of the Highway and runs northwesterly to a point approximately three-fourths of the tract's east-west width. At its western end (beginning), the ravine is a mere shallow depression easily crossed by animals and farm machinery. In its meandering south-easterly course toward Little Bayou Sara (into which it empties), the ravine becomes progressively wider and deeper, and becomes impassable at a point slightly west of the center of the tract. Its estimated maximum depth is 50 feet and maximum width about 200 feet. The eastern portion of the land north of the ravine is inaccessible from the land below. It is economically unfeasible to bridge the ravine at any point east of the center of the tract. The western one-fourth of the tract is unaffected by the ravine.
Appellant sued for a partition in kind and, alternatively, by licitation. Appellee resisted partition in any form. The trial court ordered partition and appointed a notary public to effect the division. The notary appointed a surveyor and appraiser to assist him and proposed a division into two tracts designated A and B on a plat of survey made by the surveyor. Tract A contains 624.66 acres, being in effect all of the western one-fourth of the land and all of the eastern part lying north of the ravine. Tract A has no highway frontage except an access route about 50 feet wide on the Highway by a depth of about 1000 feet, connecting the southwest corner of A to the Highway. Tract B contains 316.86 acres, all of the land south of the ravine and all of the Highway frontage except the access route to Tract A. The notary found the tracts to be of equal value, namely, $160,291.50. Appellant drew Tract B and Appellee was allotted Tract A. Appellee filed a rule to homologate the proces verbal of partition. Appellant opposed on the ground the land could not be divided in kind without diminishing its value as a whole and also claiming the tracts were of unequal value.
Appellant contends the trial court erred in: (1) Qualifying Appellee's witness, W. C. Snyder, as an expert appraiser; (2) Awarding greater weight to the testimony of Appellee's experts Snyder and C. C. Redell than to Appellant's experts Karl Snyder and George Platt; (3) Holding Tract B's best and highest use to be for homesites and thereby finding that Tract B is equal in value to A which is twice as large as B; (4) Holding it unnecessary that the tracts be *1252 exactly equal in value when it is possible to make them equal and also holding the alleged inequality was due to an error in computation; and, (5) Finding that the land can be divided equally without diminishing its value as a whole.
W. C. Snyder is a registered surveyor and real estate broker. He has surveyed numerous large farms in West Feliciana Parish. For 10 years he was woods superintendent for a lumber firm operating in the parish. As a real estate broker he purchased four large tracts between 200 acres and 1150 acres in size, for a utility company and made one or two sales of timber tracts. He surveyed subject tract for the notary appointed to make the partition. The survey took 20 days. He considered the land best suited for cattle farming and deemed a north-south division impracticable because of the ravine. He appraised the land in June, 1975, using as a comparable the sale of 271 acres taken from nearby Rosebank Plantation which he did not consider as good land as subject property. He considered also the sales of four small tracts of 52 acres or less but relied mainly on the Rosebank sale. He found Tract A contained 280.50 acres of open pasture valued at $350.00 an acre, or $98,175.00; 318.02 acres of woods and ravine worth $150.00 an acre, or $47,685.00; 23.17 acres of pasture and woods valued at $450.00 an acre, or $12,676.50; and 2.97 acres road frontage (the access road) at $600.00 an acre, or $1,782.00, inaccurately computed at $160,291.50, actually $158,086.50. He found Tract B worth $160,291.50, consisting of 118.03 acres of pasture and woods with road frontage valued at $600.00 an acre, or $70,818.00 and 198.83 acres of pasture and woods without road frontage at $450.00 an acre, or $89,473.50. He conceded it is usual to divide property according to road frontage, but that procedure was not followed in this case because it was stipulated the ravine would be the boundary and, so divided, the property could not be separated into parcels with equal road frontage and value. He conceded the land could be divided otherwise in kind but that the proposed division was the most sensible and practicable because any other equal dollar division would leave the eastern sector of the land without access to the portion north of the ravine.
The partition was effected in April, 1976, subsequent to Snyder's appraisal. On being apprised of sales of highway frontage, between the time of his appraisal and the partition, at prices up to $1,200.00 per acre, he stated that if he had had such information at the time of his appraisal, he would have decreased the acreage in Tract B to equalize values. He believed both tracts to be of equal value; that the combined value of the separate tracts equalled the value of the whole; that the division did not diminish the value of the separate tracts; and, that the sale of the whole would not bring more than the separate sale of the two parcels.
C. C. Redell, 80 years of age, testified in answer to interrogatories because he was unable to attend trial. He had many years experience appraising farm land as loan officer and appraiser for the Federal Land Bank and in such capacity had appraised subject tract several times. A licensed real estate broker, he had sold five large tracts in West Feliciana Parish, varying in size from 200 to 1,025 acres. He considered the tract as a whole, and also Tracts A and B separately, as best suited for agricultural purposes. He classified the land as containing open pasture with road frontage, open pasture without road frontage, woods and ravine, and woods and open pasture. He considered the tracts of substantially equal value except that he deemed Tract B exceeded the value of A by $2,295.00 and recommended that the owner of B refund A's owner $1,147.50 to equalize values. He conceded other divisions in kind were possible, but that for agricultural purposes, the recommended division was best. Redell believes the values of A and B separately equal the value of the whole, and that a sale of the whole would not exceed the sale value of A and B separately.
Karl Snyder, testifying for Appellant, has developed several subdivisions and sold numerous properties but never sold land in *1253 West Feliciana Parish. He had appraised three or four small tracts in the parish and also appraised one 1200 acre tract for a pipe line servitude. He had little experience with farm land and had never sold farm land anywhere. Snyder considered the land as a unit, and Tracts A and B separately, as farm land. He agreed with W. C. Snyder's land classifications of the types of land comprising A and B. In valuing the whole, he considered the aforementioned sale of Rosebank for $500.00 an acre; a sale in December, 1975, of 320 acres at approximately $500.00 an acre; a sale in December, 1975, of 328 acres for $501.00 per acre; and, an August, 1976 sale of 1,064 acres of timberland for $250.00 per acre. He used separate comparable for valuing A and B. In valuing A, he used a sale of 1,035 acres of timberland having a 100 X 3000 foot long access from a public road, for the sum of $169,206.00 in April, 1973; a sale of 442 acres, in May, 1976, for $400.00 an acre; and, a sale of 200 acres with no road access, in May 1976, for $200.00 an acre. In valuing B, he used the Rosebank sale. He valued A's 624.66 acres at $350.00 an acre, rounding out his total to $219,000.00, and valued B's 318.86 acres at $550.00 an acre, reaching a round total of $174,500.00, thus finding A's value $44,500.00 greater than B's. In valuing B's road frontage at $550.00 an acre, he utilized sales from the Wilcox property indicating sales of road frontage at prices of $850.00 and $1,000.00 per acre. He discounted the value of B's road frontage because he felt that the irregular depth to the ravine would cause problems in dividing B into 5 and 10 acre tracts with road frontage. He valued the land as a whole at $424,000.00 and A and B at $393,500.00 if sold separately, thus finding a diminution of $30,500.00 resulting from separate sales. He reached this conclusion on the ground that A's inaccessibility to road frontage diminished its separate sale value. He believed the ravine prevented division in kind without diminution of the whole value.
George Platt, on behalf of Appellant, testified he has appraised small tracts in the parish for a Building and Loan Association, but never sold a large tract in the parish. He appraised numerous parcels in the parish for expropriation by the State Highway Department. In 1973, he appraised Ellersley Plantation as a whole. He appraised subject property, as a whole, in April, 1976, and also appraised A and B separately, after traversing the land completely. He found the land as a whole best suited for agricultural purposes, but felt the highway frontage could be divided and sold as small parcels. Tract A he felt was best suited, separately, for agricultural purposes and Tract B likewise, except that B held some speculative investment potential because of its highway frontage. Using W. C. Snyder's land classifications and employing comparables, he valued A at a rounded out figure of $196,000.00, consisting of 280 acres open land at $500.00 an acre, $140,250.00; 318 acres woodland at $150.00 an acre, $47,703.00; 23.17 acres of pasture and woods at $300.00 an acre, $6,951.00; and pasture with road frontage (the access route to the highways) 2.97 acres at $500.00 an acre, $1,485.00. He valued B's 118.03 acres of open pasture with road frontage at $700.00 an acre or $82,621.00, and its 198.3 acres of woods and pasture at $500.00 an acre or $99,415.00, a rounded total of $182,000.00, and thus arrived at a $14,000.00 greater valuation of A over B. He believed the part of A situated north of the ravine to be more valuable as part of the whole because it thus had road frontage and could be reached, even if by a circuitous route. As a separate tract, he felt A suffered a loss of value because of the absence of highway frontage. As a whole, he valued the land at $440,000.00, but found the combined totals of A and B's value to be only $378,000.00, the difference of $62,000.00 being the lesser value of A without road frontage.
We find no merit in the contention that W. C. Snyder was improperly qualified as an expert and that the court did not qualify him as an expert appraiser. The qualification of an expert witness rests within the sound discretion of the trial court. The exercise of such discretion will not be disturbed save in a case of showing *1254 manifest error. The experience related by Snyder and the showing of his previous qualification as an expert in expropriation and land use cases in the trial court, other courts of this state and the federal courts, amply supports his qualification as an expert. It is obvious that the trial court qualified him as an expert appraiser considering the trial court's reliance on Snyder's appraisal in reaching a conclusion as to the values involved.
We also find no merit in the argument that the trial court erred in assigning more weight to the testimony of Appellee's appraisers than those of Appellant. The trial court found that while Appellant's appraisers were well qualified as appraisers in general, Appellee's appraisers were more experienced in dealing with local lands, were more familiar with the local market, and had considerably more experience in selling and appraising large tracts of farmland.
It is well settled that a trial court may give more weight to the testimony of one expert over another depending upon the degree of experience in the local market, familiarity with local conditions and experience with property of the type involved. City of Baton Rouge v. Bridge City Realty Company, 260 So.2d 131 (La.App. 1st Cir. 1972); State Through Department of Highways v. Singletary, 185 So.2d 642 (La. App. 1st Cir. 1966); State Through Department of Highways v. Jenkins, 207 So.2d 380 (La.App. 3rd Cir. 1968); Dixie Pipeline Company v. Barry, 227 So.2d 1 (La.App. 3rd Cir. 1969).
The right of a co-owner to demand partition of property held in common is absolute, unqualified and imprescriptible. La.C.C. Article 1337.
The law favors partition in kind whenever possible, provided such division is convenient and does not result in diminution in value of the property or cause loss or inconvenience to one of the owners. La. C.C. Article 1340; Welch v. Pitre, 216 La. 980, 45 So.2d 363 (1950).
An owner opposing a proposed partition in kind bears the burden of showing that the property cannot be divided conveniently in kind, or that such a division will diminish its value as a whole, or occasion loss or inconvenience to one of the owners. Babineaux v. Babineaux, 237 La. 806, 112 So.2d 620 (1959).
Partition in kind requires that the property be divided into parcels of equal or nearly equal value. When lots are of unequal value, the inequality is compensated for by the return of money which the owner of the more valuable parcels pays his co-owner. Aucoin v. Greenwood, 199 La. 764, 7 So.2d 50 (1942); DeLee v. DeLee, 328 So.2d 763 (La.App. 1st Cir. 1976).
The trial court found that the appraisals of W. C. Snyder and Redell valuing Tracts A and B at $160,291.50 each resulted from an erroneous calculation of the value of the 318.02 acres of woods and ravine and the 23.17 acres of pasture and woods of Tract A, at unit prices of $150.00 and $450.00 per acre respectively. The corrected totals of these categories result in a total valuation of $158,086.50 for Tract A, $2,205.00 less than Tract B. He deemed this difference inconsequential and ordered partition in kind without a return of said amount by Appellant.
Appellant complains that the trial court improperly found an equality of value based on the higher value of Tract B as having a best and highest use for sale as acreage homesites. While the trial court did mention this possibility, it is clear that it based its values on the appraisals of W. C. Snyder and Redell, which were made on finding the highest and best use of the land to be for farm and cattle lands. It was on this basis the court found B to be of insignificantly higher value than A. In any event, Appellant may not complain inasmuch as she is receiving the more valuable tract and Appellee does not urge refund of the difference.
Appellant's final complaint is that the trial court accepted the opinions of Appellee's appraisers to the effect that division *1255 in kind would not diminish either the value of the property as a whole or the value of either parcel. In so urging, Appellant submits that the testimony of her experts is more credible. The trial court made this determination adverse to Appellant on the testimony of experts he deemed the more reliable. The record contains ample evidence to support this conclusion. We find no error in this respect. City of Baton Rouge v. Bridge Realty Company, above; State Through Department of Highways v. Singletary, above.
The judgment is affirmed at Appellant's cost.
Affirmed.