453 So.2d 656 (1984)
FRANK L. BEIER RADIO, INC.
v.
Janet Duet, Divorced wife of/and Roy P. BROWN.
No. 83-CA-834.
Court of Appeal of Louisiana, Fifth Circuit.
June 29, 1984.
Writ Denied October 12, 1984.
*657 Eric A. Holden, Metairie, for plaintiff-appellant.
Robert G. Creely, Michael F. Somoza, Gretna, for defendant-appellee.
Before KLIEBERT, GAUDIN and DUFRESNE, JJ.
DUFRESNE, Judge.
This is a suit in redhibition, alternatively for quanti minoris, in which the plaintiff, purchaser of defendants' metal warehouse building, complains of a defective roof.
The basic facts are as follows:
Plaintiff, Frank L. Beier Radio, Inc. agreed to purchase a constructed, but not wholly finished, prefabricated metal warehousetype *658 building from defendants, Janet Duet and Roy Brown.
The warehouse was constructed by a subsequently named defendant, Rudy Brown Builders, Inc. who was to have built the structure with two finished office space bays and two unfinished office space bays.
During negotiations leading to execution of an agreement to purchase, and upon a simple inspection prior to the act of sale, plaintiff's representatives noticed and became aware of some leaks in the roof which were listed on a "punch list" of items which would have to be corrected by the defendants-sellers. Included in those "punch list" items were reference to a minor water stain problem.
The punch list, called Addendum "A" to the purchase agreement, lists in item 2, "Seller agrees to waterproof and repaint cement Block Wall" and in item 10, "Repair all leaks where roof meets brick wall." When asked to explain the items on the punch list, Mr. Fred Weber, the real estate agent representing the defendant, Roy P. Brown, stated that there was "noticeable water seepage" along the top of one of the back walls. He also testified that in drawing up the agreement to purchase for the plaintiff, he considered the roof leakage:
MR. WEBER: When we first examined the rear wall we were not knowledgeable of what was causing the leakage showing on the wall. I agree I am not an expert in repair work either but we did try to cover whatever was the cause back there, whether it was through inadequate waterproofing or whether there was in turn a leak at the point that was causing it to show water. We also reiterated in here repair all leaks where roof meets brick wall in the event it was not just water coming through the concrete bricks, it was an attempt to cause a correction to be made from that in a waterproofing company or someone would come in there and examine it specifically.
MR. HOLDEN: That is item number 2?
MR. WEBER: That is the comparison between item 2 and why we put it more or less as a continuation of number 10, repair all leaks. I did not presume to inspect it. It was obviously [sic] there was something wrong and we tried to cover that, that that would be corrected, whatever the cause was.
On or before June 4, 1979, the date the punch list was prepared as an Addendum to the first agreement to purchase, a second agreement to purchase was executed on August 21, 1979, which also included an Addendum with the same items as on the first punch list to be repaired. The second agreement to purchase differed from the first only in that it deleted the provision in which the defendant, Roy Brown agreed to rent one of the bays.
Mr. Weber further stated that he knew the purchasers were aware of roof leaks in the rear wall of the building prior to signing the agreement to purchase. He also stated that he visited the building with the purchasers four or five times prior to the June 4, 1979 agreement and that he discussed with them the leakage problem. Prior to this June 4, 1979 agreement and through September 4, 1979, Mr. Weber, the plaintiff-purchaser, and the defendants-sellers negotiated about the problems on this punch list.
It wasn't until September 4, 1979, did the plaintiff and defendants agree to place in an escrow account $5,000.00 of the purchase price to ensure that the "punch list" items were completed. Being assured that all items contained on the "punch list" were completed, the plaintiff directed a letter to Delta Title Corporation authorizing the release of the funds remaining in the escrow account.
Eric Beier, Vice President and Secretary of Frank L. Beier Radio, Inc. and appearing as one of the plaintiff's representatives testified that prior to the execution of the agreement to purchase, he was aware of the leakage problems in the building and while he said he saw only stains, he admitted he thought there were leaks where the roof met the back wall. He testified that when he looked at the back wall of the building, he definitely assumed that there *659 was water leakage and that obviously something was wrong. Eric Beier visited the building two or three times before the act of sale and thought that his brothers had also been there.
There was no leaks in the building from September 4, 1979, until December 17, 1979. During that time, the plaintiff had construction work done on the inside of the building and a tenant occupying the building. Mr. Beier stated that the first notice of roof leaks in the building he received was on or about December 17, 1979, yet he admitted that his company authorized the release of escrow funds on February 15, 1980, almost two months later. Yet, Mr. Beier also testified that at the time the authorization to release the escrow funds was given, he had no knowledge of the leaks.
At all times, the defendants defend this suit by stating plaintiff was aware of the water leakage problem prior to the act of sale.
The plaintiff contends that only subsequent to its purchase of the building did it discover the warehouse had severe water leakage into the interior emanating from the front wall of the building. The defendants failed to correct the defect complained of and thus, plaintiff was reluctantly compelled to hire a metal building erector, Mr. Fred Martin, who examined the structure. He recommended and completed replacement of the structure's roof and valley gutters. The plaintiff asserts that the building continued to leak until Mr. Martin completed the necessary repairs.
Consequently, the plaintiff filed this suit in order to recover the costs of repairs, damage, attorney's fees and court costs. Furthermore, the plaintiff argues that it would not have purchased the building had it known of the severe defect, thus plaintiff seeks recovery in redhibition or quanti minoris.
After a trial on the merits, the trial court gave written reasons for judgment wherein it found that since the plaintiff was aware of the "serious water problem before the sale, that a checklist was made of deficiencies, and that the sale price of the building was negotiated down from the $225,000.00 to $200,000.00" created serious obstacles for plaintiff's recovery. The court commented further:
"In short, the price of the building was negotiated down because of deficiencies in layout and condition; money was placed into escrow, and an addendum prepared therewith speaks of leakage problems. All the testimony taken together indicates that the purchaser knew of a serious leakage problem before the sale, although perhaps not the extent of the problem. Nevertheless, the purchaser is charged with knowledge, and the purchaser's claims are rejected."
The trial court also held that information included in the deposition testimony of Mr. Fred Martin, the person hired by the plaintiff-purchaser to repair the severe roof (i.e., leakage) problems, was "insufficient to make a determination whether or not he is an expert," and thus refused to recognize Mr. Martin as an expert witness. The court did allow limited use of Mr. Martin's testimony as a fact witness, but did not allow any testimony which the court deemed to be Mr. Martin's "opinion" to be admitted. Therefore the trial court found, although of lesser import, that plaintiff was "unsuccessful in attempting to qualify an expert to show that extensive repairs, which were, in fact, performed, were necessary to cure the problem."
As a result of the trial court ruling in favor of the defendants, plaintiff has appealed to this court for relief and assigns the following specification of errors to wit:
1.) The lower court erred in failing to qualify Fred Martin as an expert in construction and repair of prefabricated metal frame buildings and to admit and consider Fred Martin's testimony relative to the defects in the building.
2.) Even if Fred Martin does not properly qualify as an expert, which is denied, the lower court erred in failing to admit and consider Fred Martin's testimony, as Louisiana law has recognized that a redhibition *660 plaintiff need not prove his case by expert testimony.
3.) The lower court erred in failing to find that the defects complained of were, in fact, redhibitory in nature, that these defects were not disclosed nor were they known to the purchaser prior to the sale, and thus that purchaser should be entitled to recovery.
4.) The lower court erred in failing to find that because defendant Roy P. Brown and Rudy Brown Builders, Inc. were active in the construction of the subject building, they should be recognized as "bad faith" manufacturers under Louisiana law due to their presumed knowledge of the defects in the building sold and their failure to disclose such defects.
It is well established in Louisiana that factual determinations of the trial court are subject to review under the manifest error doctrine in this State.
"`manifestly erroneous', in its simplest terms means `clearly wrong'." Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
The decision as to the qualification of a witness as an expert is within the discretion of the trial judge and will not be reversed absent a finding that it is clearly erroneous as a matter of law, Roberts v. Tiny Tim Thrifty Check, 367 So.2d 64 (La. App. 4th Cir.1979); Maddox v. Percy, 351 So.2d 1249 (La.App. 1st Cir.1977).
This court and all appellate courts of this State have recognized the discretion of the trial court to properly exclude the testimony of any witness as an expert. We have earlier decided that:
"The qualifications of an expert witness rest within the sound discretion of the trial judge, and the judge's determination will not be disturbed by the appellate court; absence a clear abuse of the trial judge's discretion (i.e., manifest error). The trial judge must be allowed much discretion in determining a witnesses' qualifications and competence to testify as an expert, and the reviewing court must not disturb the trial judge's ruling unless the error is clear and involves a misconception of law." (citations omitted) Hunnicutt v. Kent, 434 So.2d 91, (La.App. 5th Cir.1982).
After reviewing the evidence, we agree with the trial court and find no error in the trial court's decision not qualifying Mr. Martin as an expert assuming for argument, our decision would differ from that of the trial court in this respect, the error would be harmless as the more serious obstacles deal with plaintiff's knowledge of the water leakage problem.
The more dispositive issue presented in this appeal revolves around whether the plaintiff knew or should have known of the serious water leakage in the roof of the warehouse.
This resolution of this issue will ultimately determine the outcome of this appeal, whether it be in redhibition or for breach of contract with a necessary reduction in the purchase price. Did the plaintiff know the condition of the roof?
Throughout the trial record, we find contradictions between plaintiff and defendants. One fact is constant throughout this litigation and is recognized by all parties: the structure suffered from water leakage, but did the plaintiff know of its severity? The trial court concluded that "all parties knew of the serious water problem before the sale" and accordingly, negotiated from this standpoint. We agree with the trial court's factual conclusion.
As clearly explained earlier, when there is a conflict in testimony, the appellate court should not disturb the reasonable findings of the trial court even though the reviewing court feels that its evaluation and inferences are also reasonable, Greco v. Jordon, 419 So.2d 42 (La.App. 5th Cir. 1982). In Greco, the standard of our review was made clear:
"The standard of appellate review as explained Canter v. Koehring, 283 So.2d 716 (La.1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) is that even though the Appellate Court may feel that its own evaluations and inferences *661 are as reasonable, it should not disturb reasonable findings of the trial court when there is conflict in the testimony. When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the Appellate Court should not disturb this factual finding in the absence of manifest error, i.e., unless it is clearly wrong."
The record supports the trial court's finding that the plaintiff-purchaser knew of the leakage problem because both the purchaser's representative and it's representative so stated. In addition, the purchaser negotiated the sale to its advantage based on the fact that there were leaks. The purchasers offered the seller $200,000.00 for a building listed at $225,000.00. Plaintiff contends that Fred Weber, the real estate agent, "expressly testified that the price was not reduced in contemplation of known defects in the construction of the building." The trial transcript reveals that what Mr. Weber testified is that he, Mr. Weber, knew of no other reason for the reduction of the purchase price; he did not state that there were no other reasons.
In addition to negotiating a lower purchase price, an agreement to purchase was negotiated, to which a punch list of items to be completed or repaired was attached. This punch list included roof leaks in two separate categories. Further, to ensure that these items were satisfactorily repaired or completed, $5,000.00 of the purchase price was placed in escrow, with the remainder of funds to be released only upon plaintiff's authorization. The plaintiff did in fact authorize the forwarding of the remainder of the funds to Roy Brown in February, 1980, even though Eric Beier stated that he had become aware of the roof leakage he alleges is the redhibitory defect in December, 1979. Mr. Weber testified that he did not know which party required the punch list and escrowed funds; it is difficult to imagine any seller requesting a punch list to be included as a condition of sale, a portion of the sale price he is to receive be escrowed, or a reduction in the sale price of $25,000.00.
The plaintiff-purchaser's knowledge of the defects it alleges in this suit will defeat its claim in redhibition.
LSA. C.C. Arts. 2520-2522 provide:
ART. 2520. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
ART. 2521. Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.
ART. 2522. The buyer can not institute the redhibitory action, on account of the latent defects which the seller has declared to him before or at the time of the sale. Testimonial proof of this declaration may be received.
One of the essential elements of the redhibitory action is the existence of a defect unknown to the purchaser at the time of the sale which would have influenced the purchaser not to buy the thing if he had known of the defect. The purchaser has a duty to inspect the thing to discover any apparent defects and also cannot bring a redhibitory action on account of any defects which, though not discoverable by a simple inspection, the seller informed him of before or at the sale. The policy which underlies this article is to remedy the unequal bargaining positions of the buyer and seller in negotiating a sale and to provide a remedy for buyer when the item he purchases is not the item he thought he purchased due to some vice or defect, unknown to him and not readily discoverable.
When in fact a purchaser knows of the defects in the thing and used this knowledge in arriving at a deal with the seller, the defects are not redhibitory and the seller cannot bring an action in redhibition.
To void the sale, the court would have to have found redhibitory vices or *662 defects, LSA.-C.C. Art. 2520. In a redhibition suit the judge may decree a reduction in the purchase price if warranted, LSA.-C.C. Art. 2543. However, the law is clear, the reviewing court must give great weight to factual conclusions of the trier of fact; and, where there exists substantial conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact of the trial court should not be disturbed by the appellate court in absence of manifest error. We further find that the record is absent of any evidence of bad faith on the part of the seller-defendant, Roy Brown.
Here this case is dependent upon the assessment of the credibility of the witnesses. There is a reasonable factual basis for the trial court's finding and it is not manifestly erroneous.
Accordingly, we affirm the judgment of the trial court against the plaintiff, Frank L. Beier Radio, Inc. and in favor of the defendants, Janet Duet, Roy P. Brown, and Rudy Brown Builders, Inc.
All costs of this appeal are to be paid by the plaintiff.
AFFIRMED.