DOMENGEAUX, Judge.
In the month of August, 1968, plaintiff herein, Lloyd R. Walters, was considering the purchase from a private owner of a certain 1965 Ford station wagon type automobile. In pursuit of his intentions plaintiff took the said automobile to the place of business of defendant herein, Canal Motors, Inc., and requested that defendant make a mechanical inspection of the automobile. At that time the mileage as shown by the automobile’s odometer was 38,571 miles. Defendant made the inspection on August 26, 1968, charging plaintiff the sum of $25.00 therefor, and presented plaintiff with a written report of what it had found in which appeared the notation inter alia, “Brakes Good.” The report was otherwise favorable and plaintiff on September 18, 1968, purchased the station wagon for the *102 price of $995.00. Two days later plaintiff presented his newly acquired automobile for inspection for brake tag purposes and was informed that it would not pass inspection due to defective brakes. By that time the mileage on the automobile was 38,800 miles. Subsequently, on September 30, 1968, plaintiff returned to defendant’s place of business and asked that a brake inspection be made on the automobile. This was done and plaintiff was informed that a complete brake job would be required to make his automobile safe for operation. Plaintiff asked defendant for a $25.00 credit, representing the price he had paid defendant for the original inspection, on the price of a complete brake job but defendant refused to allow any such credit. As a result plaintiff took his automobile to D. H. Holmes Car Care Center where he had the complete brake job done at a price of $180.65, and subsequently sued defendant for that sum plus interest, costs and attorney’s fees. After a trial on the merits the trial judge, holding that plaintiff had failed to prove his case by a preponderance of the evidence, dismissed plaintiff’s suit. Plaintiff moved for a new trial on the grounds of newly discovered evidence and error in the judgment. His motion was denied by the trial court and plaintiff then perfected an appeal to this court.
The mechanic who performed the first inspection on August 26, 1968, in defendant’s shop, Mr. Brock, testified that in checking the brakes he removed one of the front wheels and visually inspected the brake shoes and drum. He then road-tested the automobile and tested the brake pedal. The latter was found to be loose and a successful adjustment was made on the brakes to make it function properly. This, he said, is the normal, standard manner of checking the brakes when a general mechanical inspection is asked for by the customer. If the front brakes are found to be in good condition it is neither necessary nor customary to investigate further, since the rear brakes are usually in better condition than are the front brakes. He stated that brake drums are measured with a micrometer only when the customer specifically complains of brake trouble. Mr. Brock found nothing wrong with the brakes on the wheel that he inspected and so he proceeded no further. It was his opinion that the brakes were good for another 10,000 miles. He did note, however, that the brake linings were the bonded type rather than the riveted type preferred and customarily used by Ford Motor Company.
The mechanic who inspected the brakes on plaintiff’s second visit to defendant’s shop was a Mr. Tur. He testified that when he made his inspéction on September 30, 1968, he removed all four wheels and found the brake shoe linings on both the front and the rear brakes to be cracked and peeling off. He also noted that the brake drums had been previously turned but he did not know whether they had been turned beyond the safe limit which, according to his testimony, is 120 thousands of an inch on the inside diameter of the drums. He then called plaintiff and informed him that a complete brake job was needed but, as stated above, plaintiff did not allow him to do the brake job because of defendant’s refusal to grant plaintiff the aforementioned $25.00 credit. This witness also testified that bonded brake linings such as plaintiff had on his automobile can crack from heat at “anytime, from one day to the next,” and that they are not standard equipment on Ford automobiles. He corroborated Mr. Brock’s statement describing the routine method of checking the brakes during a general inspection of an automobile.
Plaintiff called Mr. Kobeck, the mechanic who repaired the brakes on plaintiff’s automobile at the D. H. Holmes Car Care Center on September 30, 1968. Mr. Ko-beck also found the brake linings to be cracked and falling off and the rear linings to be completely worn off and digging into the brake drums. He found grease leaking into the braking system from the axles and also brake fluid leaking from the wheel cylinders. The brake drums were *103 turned beyond what he said to be the legal limit of sixty thousands of an inch. (Here he was obviously referring to a thickness along the rim of the drum which when measured as a diameter would be the same as the 120 thousands of an inch that Mr. Brock testified to as being the limit). Mr. Kobeck testified that he could not remember whether plaintiff’s automobile had bonded or riveted brake shoe linings, however, he joined in Mr. Tur's condemnation of bonded brake linings stating that a driver could cause bonded brake linings to crystalize in as short a trip as “going around the corner by keeping his foot on the brake.” He conceded that with abuse, such as riding the brake, bonded brake shoe linings could crystalize within twenty-four hours. Further he stated that wheel cylinders could be caused to leak by simply applying the brakes with too much sudden force one time. In his opinion there was not evidence of abuse but rather of neglect in the faulty brakes. However, he throught that if the self-adjusting mechanism of the brakes were inoperative the conditions that were present could result in ten days. He in fact changed the braking system from self-adjusting to manually adjusting because the self-adjusting system was not in good condition. This witness also corroborated what the other two mechanics had said about removing only one of the front wheels to check the brakes in the course of a general inspection of an automobile, unless there is a specific complaint about the brakes.
We see then that the only witness plaintiff had, other than himself, gave testimony on cross-examination that was highly damaging to his case. Furthermore, plaintiff left more than three weeks of his automobile’s life, the time between its original general inspection and its purchase, unaccounted for. Anything could have happened to the automobile during that time, including abuse of the brakes and improper workmanship on them, and neither plaintiff, nor defendant, nor this court know if anything did happen to the automobile. This was an omission that plaintiff could easily have corrected by producing the original owner of the automobile in court.
After carefully reviewing the record and having considered the above observations, we are unable to say that the trial court committed manifest error in dismissing plaintiff’s suit. While we have our doubts that a proper inspection was performed by defendant on August 26, 1968, the trial court’s evaluation of the credibility of the witnesses is entitled to great weight and the testimony is not lacking in support for his judgment. Finding no manifest error, or clear abuse of discretion, we must affirm the judgment of the trial court on the merits.
With regard to plaintiff’s motion for a new trial our law is well settled that the denial of a motion for a new trial is not appealable. Kirkeby-Natus Corporation v. Campbell, 250 La. 868, 199 So.2d 904; General Motors Accept. Corp. v. Deep South Pest Control, Inc., 247 La. 625, 173 So.2d 190. We, therefore, do not consider his appeal from the denial of the motion.
For the reasons assigned the judgment of the district court is affirmed at plaintiff’s cost.
Affirmed.