471 So.2d 240 (1985)
Frank CORE
v.
WINN-DIXIE OF LOUISIANA, INC.
No. 84 CA 0150.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
Rehearing Denied June 27, 1985.
*241 J. Thomas Anderson of Baham and Anderson, Hammond, for plaintiff-appellee Frank Core.
Alton B. Lewis, Jr. of Pittman, Matheny, Lewis & Moody, Hammond, for defendantappellant Winn-Dixie of Louisiana, Inc.
Before COLE, SHORTESS, CARTER, LANIER and CRAIN, JJ.
*242 CARTER, Judge.
This is an appeal from a jury award of $301,600.00[1] in favor of the plaintiff, Frank Core, for injuries he received when he slipped and fell in defendant's grocery store in Ponchatoula, Louisiana.

FACTS
On September 7, 1982, Mr. Core and his wife were shopping in the Winn-Dixie grocery store in Ponchatoula, Louisiana at approximately 8:00 p.m. Winn-Dixie had a temporary display of soft drinks in the middle of the aisle adjacent to the area in which liquid detergents were shelved. As they approached this area, Mr. Core was in front of his wife pushing the shopping cart which was full, and somewhat obstructed his view of the aisle ahead. He slipped in a pool of Ajax liquid detergent on the floor, fell onto his back, and was severely injured.
At the time of the accident, the plaintiff was forty-seven years old and had a seventh grade education. He had previously worked as a field laborer on a dairy farm for thirteen years, and then worked in construction as a laborer. He later became a heavy equipment operator, and finally in 1977 (the last year he was employed), he was a construction foreman and earned $20,000.00. In 1978, angina attacks forced him to quit his job. In November of 1981, he underwent open heart surgery, and a triple bypass was performed. During the course of the operation, five stainless steel wires were implanted in Mr. Core's chest to hold his sternum in place, to allow healing, and to help maintain its stability.
As a result of the slip and fall accident, all five stainless steel wires in Mr. Core's sternum were broken, and he sustained an additional irregular fracture of his sternum. He also injured his lower back and suffered a concussion.
After trial by jury and judgment in favor of plaintiff, defendants appealed urging eleven assignments of error.

ASSIGNMENT OF ERROR NO. 1[2]
In this assignment of error, the defendant contends a new trial should be granted under LSA-C.C.P. art. 1972 because of newly discovered evidence important to the case which could not have been obtained with due diligence before trial.[3]
The newly discovered evidence referred to by defendant involves two entries in the plaintiff's medical records from the Hammond Mental Health and Substance Abuse Center (HMH) which the plaintiff introduced into evidence in connection with the testimony of Dr. Richard P. Strobach, a psychiatrist who had treated plaintiff.
The first entry was dated May 10, 1982: *243 Frank talked about some of his fear & anxiety of another operation; noted positive effects from triple bypass. His sternum may need repair. Also spoke of anxiety felt when he is in crowd of strangers (e.g. restaurant)a feeling he has experienced for years. He will see cardiologist at Tul. Med. Center tomorrow. Asked him to call me Wed. afternoon to let me know how it went.
The second entry was dated June 7, 1982:
Trying new med., feeling better but ankles swellingperhaps from meds; still experiencing "looseness" in chest he will ask doctor about it next week or earlier. Spirits higher than last visit less immediate threat of anoth. operation and more acceptance of disability.
Defendant contends that these two entries indicate that plaintiff's sternum was separated prior to the accident, which directly contradicts a statement made by plaintiff in a deposition taken December 9, 1982, that he had no problems with his sternum prior to the accident. Plaintiff contended that he had suffered a separation of his sternum as a result of his slip and fall. Defendant claims that because Dr. Peter Moulder, plaintiff's treating physician, had testified on the first day of trial and had been released by the court, that aspect of the case could not properly be developed. Defendant's counsel asserts that, as a result of the premature release of plaintiff's treating physician, he was unable to recall Dr. Moulder for examination as to the alleged pre-existing sternum problem. Furthermore, defendant claims that after trial it discovered that plaintiff was treated at Charity Hospital in New Orleans on several occasions between the time of his open heart surgery and the accident.
LSA-C.C.P. art. 1972 provides in pertinent part:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial. (Emphasis added)
The two medical record entries were read by the defendant shortly before the entire medical record was introduced into evidence. Furthermore, these entries were emphasized to the jury when the defendant had Dr. Strobach read them into the record. Therefore, although the defendant based its motion for a new trial on the peremptory ground of newly discovered evidence, it is obvious that the allegedly new evidence became available to defendant during the course of the trial. Under these circumstances, the granting of a new trial is within the discretion of the trial judge and should not be reversed unless an abuse of discretion can be shown. LSA-C.C.P. arts. 1972, 1973; Eddy v. Topper, 431 So.2d 840 (La.App. 2nd Cir.1983); Walters v. Canal Motors, Inc., 240 So.2d 101 (La.App. 4th Cir.1970).
In this situation, the defendant could have requested a continuance so that Dr. Moulder could be recalled to the stand, and an instanter subpoena could have been requested for any additional medical records. LSA-C.C.P. art. 1601. Defendant instead chose to request a new trial. The motion was denied by the trial judge, and we see no error or abuse of discretion in his action.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
In these assignments of error, defendant contends the jury erred in finding that the accident was caused by the sole negligence of defendant.
Mr. Core testified that while assisting his wife in grocery shopping, he was ahead of her slowly pushing the full shopping cart. A temporary display of two-liter soft drinks was in the middle of the aisle where the liquid detergents were located. As Mr. Core walked past the soft drink display, he slipped, fell and was knocked unconscious. He did not observe any foreign substance on the floor before he fell.
*244 There were three eyewitnesses to the accident: Evelyn Core (plaintiff's wife), Gwendolyn Pinion (plaintiff's daughter), and Mattie Willie (plaintiff's sister-in-law). All three testified that they saw plaintiff slip in a pool of Ajax liquid detergent and that when they reached him, he lay unconscious on his back in the detergent.
Four of defendant's employees testified that there was a pool of liquid detergent on the floor and that Mr. Core was lying on his back in it. Furthermore, there was a half-empty, twenty-two ounce plastic bottle of Ajax liquid detergent turned over on its side near the spill, and its spout was open.
In self-service grocery stores, a multitude of items are displayed upon shelving along the aisles which entice customers to focus their eyes upon the displays rather than on the surface upon which they walk. It is not uncommon that an employee or a customer will cause a substance on display to fall or to spill onto the floor and thereby create a hazard to customers subsequently shopping in the area. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La. 1984); Kavlich v. Kramer, 315 So.2d 282 (La. 1975).
Under "slip and fall" jurisprudence, a store owner has a high duty to discover unreasonably dangerous conditions existing on the premises and to take reasonable steps to prevent injury resulting from the dangerous condition. The degree of vigilance is commensurate with the risk involved, as determined by the overall volume of business, the time of day, the type of display, the section of the store, the nature of customer service, and the amount of floor space utilized for customer service. Once a plaintiff shows that he slipped, fell, and was injured due to a dangerous condition, the burden shifts to the defendant-owner to exculpate himself from presumed negligence. Brown, supra; Kavlich, supra; Dulaney v. Travelers Ins. Co., 434 So.2d 578 (La.App. 1st Cir. 1983).
The defendant's employees testified that they were all instructed by their employer to be constantly on alert for spills and merchandise in the aisles. Generally, however, no one was assigned the specific duty of inspecting the aisles, everyone simply was instructed to check the floors as they performed other assigned duties.
The assistant manager, who was in charge of the store at the time of the accident, testified that he used part-time employees to clean the floor. He had instructed one of these part-time employees to clean the floor approximately two-and-ahalf hours prior to the accident. This employee was not called to testify.
The assistant manager further testified that on the day of the accident, he did not assign anyone the specific duty of inspecting the aisles. Neither the assistant manager nor any other employee could specifically remember walking down the aisle in question that evening, and none had observed the spilled Ajax prior to the accident. One employee testified that because the Ajax and the floor tiles were similar in color, the Ajax could have been on the floor and he simply did not see it.
Gwen Pinion, Mattie Willie, and Evelyn Core testified that they had occasionally observed debris on the floor of this particular store.
In the case sub judice, the plaintiff established that there was a large spill of Ajax liquid detergent in the aisle where he and his wife were shopping, that the detergent came from an overturned Ajax bottle near the liquid detergent shelf, that plaintiff did not see the spill, and, that it caused him to slip, fall, and be injured. Plaintiff proved the existence of a condition that presented an unreasonable risk of harm which resulted in his injury. The burden then shifted to the defendant to exculpate himself from presumed negligence. Defendant did not do so. Defendant established only that none of its employees observed the spill while they were performing their assigned duties on the evening of the accident. Therefore, plaintiff is entitled to recovery of his damages. Brown, supra.
These assignments of error are without merit.

*245 ASSIGNMENT OF ERROR NO. 4
In this assignment of error, defendant contends the trial judge erred in refusing to allow the defendant to introduce a portion of the deposition of Mattie Willie for impeachment purposes. Defendant argues that the statements made by Ms. Willie during her deposition show that Mr. Core had recovered from his injuries well before trial.
During trial, Ms. Willie testified as to the condition of plaintiff after the surgery to repair his fractured sternum:
[by counsel for plaintiff]
Q. Did you notice anything different about Mr. Core before the accident as opposed to when he returned home after the accident?
A. Before the accident he would talk and we would laugh, and he got around pretty good. He would mow the yard and different things. He did housework sometime for my sister. It was just different. After he come home he didn't have much to say, and just about every time we went he would by laying down. Sometimes he would be sitting up but he didn't stay up very long because his leg and back would be hurting him, and his chest when he first come home for awhile it was real sore and bothing him.
....
[by counsel for defendant]
Q. You described Mr. Core's temperament and condition after the accident, how long did that last?
A. I wouldn't say now that .. he still .. he don't talk much or anything now.
Q. What about his problems where he has to oay (sic) down all time, how long did that last?
A. He still lays down a lot.
Q. Do you remember when I took your deposition in this matter?
A. Yes I do.
Q. That was this past April .. remember that?
A. Right.
Q. And do you remember in that deposition.. Page 27 I asked you in that deposition how long was it before he was back to normal and you said I. don't know if he is really back to normal now. He still has trouble with his legs and back and stuff hurting. Then I said how long was it before he was substantially back to normal.
BY MR. ANDERSON:
And I objected to the form of question Your Honor.
BY MR. LEWIS:
Which was ...
BY THE COURT:
How long was it before he was substantially back to normal. Let me see the deposition. (After looking at deposition) The question has been asked, the objection is sustained.
BY MR. LEWIS:
. . . . .
BY THE COURT:
It was asked and answered.
The defendant proffered the following excerpt from Ms. Willie's deposition:
[by attorney for defendant]
Q. How long was it before he was back to normal?
A. I don't know if he is really back to normal now. He still has trouble with his legs and back now, and stuff hurting.
Q. How long was it before he was substantially back to normal?
MR. ANDERSON:
I object to the form of the question.
MR. LEWIS:
You can go ahead and answer.
THE WITNESS:
I don't really know right off.
EXAMINATION BY MR. LEWIS:
Q. Would it be three months, two days?
A. It wasn't two days. That's for sure. I'm just going to approximately say maybe three months. I don't know.
After reviewing the proffered evidence, we find it insufficient to establish that plaintiff had recovered from his injuries *246 prior to trial. As discussed in the following assignments of error, plaintiff presented abundant evidence through the testimony of physicians and family members that he was severly injured in the Winn-Dixie store and that he had not recovered from these injuries.
Accordingly, there is no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 5
In this assignment of error, defendant contends the trial court erred in accepting Dr. Max Strader as an expert in the field of professional economics.
Dr. Strader had a PhD degree in economics from the University of Florida and was a faculty member at Southeastern Louisiana University (SLU). He dealt with actuarial statistics in his capacity as an instructor and also in his capacity as the Director of the Business Research Center at SLU. He had previously qualified as an expert in the field of professional economics.
The qualification of an expert witness rests within the sound discretion of the trial court, and the exercise of such discretion will not be disturbed except upon a showing of manifest error. Maddox v. Percy, 351 So.2d 1249 (La.App. 1st Cir. 1977), writ denied, 353 So.2d 1336 (La. 1978).
The trial judge found, and we agree, that the experience and education related by Dr. Strader and the showing of his previous qualification as an expert in professional economics amply support his qualification as an expert.
We find no merit in this assignment of error.

ASSIGNMENTS OF ERROR NOS. 6 AND 9
Defendant contends that the trial judge erred in admitting Dr. Strader's testimony relative to lost earnings and that the jury erred in awarding plaintiff $100,000.00 for future lost earnings.
In response to a hypothetical question, Dr. Strader testified that a forty-eight year old white male, who worked until he reached age sixty-five and who earned $20,000.00 in 1982, would earn $598,114.00 over the seventeen year span, assuming a six percent annual salary increase.
Mr. Core testified that his physical condition progressively improved after his November, 1981, open heart surgery. His wife testified that he was looking forward to returning to work. Mr. Core, Evelyn Core, Mattie Wilson, and Gwen Pinion testified that after the open heart surgery, Mr. Core had progressed to the point that he was able to do some gardening, mow the lawn, hunt, and help his wife with the housework, and that he was walking a mile a day. This is supported by the following entry from the records of HMH:
2-17-82 Looking good. He thinks he's getting back to normal following heart surgery. He goes back 3-12 to Dr. in N.O. He wants to go back to work, but Dr. does not advise so.
After the accident, however, Mr. Core, Evelyn Core, Mattie Wilson and Gwen Pinion testified plaintiff could do very little physically and that he had become depressed and irritable. Dr. L.S. Kewalramani, admitted as an expert in the fields of physical medicine and rehabilitation, testified that plaintiff was disabled from performing any type of work requiring lifting, pushing, or pulling.
In rebuttal, defendant argues that Mr. Core was totally disabled prior to the accident because of his heart condition and would never have been able to return to work, even if there had been no accident.[4] In any event, the jury heard the testimony, evaluated the credibility of the witnesses, and, in their wisdom, returned an award for future lost earnings. We find no manifest *247 error and will not disturb this factual finding. Canter v. Koehring Company, 283 So.2d 716 (La.1973).

ASSIGNMENT OF ERROR NO. 7
Defendant contends the trial court committed error in allowing plaintiff to exhibit to the jury the scar incurred in surgery because this merely served to inflame the jury and thereby increase the damages awarded.
Dr. Moulder testified that entry to repair Mr. Core's sternum after the accident was made in the same scar and incision location as was the original bypass surgery and that this new incision was virtually the same length as the earlier one. Therefore, the jury was aware of the scope of the previous surgery and certainly took this into consideration in making their award as evidenced by the fact that the verdict contained no award in the category of "aggravation of scarring."[5]
We find no merit in this assignment of error.

ASSIGNMENTS OF ERROR NOS. 9 AND 10
These assignments of error were not briefed and are, therefore, considered abandoned. Rule 2-12.4, Uniform Rules Court of Appeal.

ASSIGNMENT OF ERROR NO. 11
Defendant contends the trial court erred in making the following awards: physical injury suffered$75,000.00; physical pain and suffering, past and future$50,000.00; mental pain and suffering, past and future $30,000.00; permanent, partial or total disability$15,000.00. These separate awards total $170,000.00, and defendant asserts that a total award of $80,000.00 is the highest reasonable award.
Dr. Moulder testified that Mr. Core suffered a concussion when he fell, that all of the stainless steel wires implanted in the original open heart surgery were broken, and that he suffered a new, irregular sternum fracture. To keep the dissection to a minimum, two of these broken wires had to be left in Mr. Core's chest. To repair the fracture, Dr. Moulder found it necessary to employ an orthopedic device called "parum bands" in addition to stainless steel wires. A parum band is a broad piece of metal that is wrapped around a fracture and implanted permanently.
Dr. Moulder also examined plaintiff shortly before trial[6] because of sharp pains Mr. Core was developing in his left anterior chest. This examination revealed a residual fracture of the costochondral junction caused by the accident. Mr. Core will require additional surgery to repair this fracture.
Dr. Kewalramani testified that plaintiff will experience cyclic pain for the remainder of his life and is disabled from performing any type of work that will require lifting, pushing, or pulling activities.
In the assessment of damages in cases of quasi offenses, the jury is given much discretion. Perniciaro v. Brinch, 384 So.2d 392 (La.1980). Before an appellate court can disturb a jury award, the record must clearly reveal that the jury abused its much discretion in making the award. Perniciaro v. Brinch, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
In view of the testimony of Dr. Moulder and Dr. Kewalramani and the standard of review afforded us in jury verdicts, we find no abuse of discretion in the jury award.
Accordingly, the judgment of the trial court is affirmed. Defendant is cast for costs of this appeal.
AFFIRMED.
LANIER, J., concurs in part and dissents in part. The evidence is not sufficient to prove the lost earnings claim and the jury verdict granting same is clearly wrong.
*248 COLE, J., dissents from that part of the majority opinion awarding $100,000 for loss of future earnings.
NOTES
[1] The jury awarded the following damages:

Physical injury suffered $ 75,000.00
Physical pain and suffering, past
and future $ 50,000.00
Mental pain and suffering, past
and future $ 30,000.00
Past medical expenses $ 16,600.00
Future medical expenses $ 15,000.00
Loss of earnings $100,000.00
Permanent, partial or total
disability (if any) $ 15,000.00
Aggravation of scarring (if any) $ 0 
GRAND TOTAL OF ALL DAMAGES $301,600.00

[2] Defendant also contends in this assignment of error that the judgment of the trial court is contrary to the law and evidence. As will become apparent in our discussion of Assignments of Error Nos. 2-11, we find no basis for this contention.
[3] Generally, an order denying a motion for a new trial is a nonappealable judgment. Elliott v. Merritt, 457 So.2d 1216 (La.App. 1st Cir.1984), writ denied, 461 So.2d 315 (La.1984). However, such an order is reviewable under our supervisory jurisdiction for abuse of discretion. Miller v. Chicago Insurance Company, 320 So.2d 134 (La. 1975). Moreover, appeals from otherwise unappealable interlocutory judgments are permitted when they form part of an unrestricted appeal from a final judgment. Walters v. Canal Motors, Inc., 240 So.2d 101 (La.App. 4th Cir. 1970); Bielkiewicz v. Insurance Company of North America, 201 So.2d 130 (La.App. 3rd Cir. 1967). In the case sub judice, a final judgment was signed August 29, 1983, and the defendant's motion for a new trial was denied on October 12, 1983. In the motion for appeal, defendant appeals from the final judgment rendered on August 29, 1983. Defendant's appeal from the trial court judgment denying a new trial is part of an overall appeal from a final judgment. Therefore, this issue is properly before us on appeal.
[4] In Assignment of Error No. 4, defendant argued that Mr. Core had recovered from his injuries before trial. In support of this contention, defendant stated "[t]here is no doubt that by December of 1982 and no later than April of 1983, Mr. Core was recovered from his injuries," and was "in good spirits, was looking good and was sleeping well."
[5] See footnote 1, supra.
[6] The trial took place on August 25 and 26, 1983.