543 So.2d 970 (1989)
Euel FRANKLIN and Sue Franklin, Plaintiffs-Appellants,
v.
PAUL DUPUIS & ASSOCIATES, A General Partnership d/b/a Econolodge and United States Fidelity & Guaranty Company, Defendants-Appellees, Roadway Services, Inc. Intervenor-Appellant.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
Writ Denied June 16, 1989.
*971 Andrus, Broudreaux, Lemoine & Tonore, Gregory E. Tonore, Lafayette, Gray, Espy & Nettles, Wm. P. Gray, Jr., Tuscaloosa, Ala., for plaintiffs/appellants.
Gachassin, Hunter & Sigur, Nicholas Gachassin, Lafayette, Bienvenu, Foster, Ryan & O'Bannon, John E. McAuliffe, Jr., New Orleans, for defendants/appellees.
Before DOMENGEAUX, LABORDE and KNOLL, JJ.
DOMENGEAUX, Judge.
Euel Franklin and Sue Franklin commenced these proceedings to recover damages for the injuries they suffered subsequent to the shooting of Euel Franklin during an armed robbery on the premises of the Econolodge motel located at 1605 N. University Avenue in Lafayette, Louisiana. The Franklins named as defendants: (1) Paul Dupuis and Associates, A General Partnership d/b/a Econolodge (Econolodge), the owner of the motel; and (2) United States Fidelity & Guaranty Company (USF & G), Econolodge's insurer. Intervening in this action was Roadway Services, Inc. (Roadway), a Mississippi corporation and the employer of Franklin. Roadway intervened seeking the recovery of worker's compensation benefits it had paid to Franklin.
Franklin, at approximately 4 o'clock on the morning of June 27, 1986, drove his tractor-trailer onto the premises of the Econolodge motel. He stopped his truck by the lobby and registered through an exchange window. Subsequent to registering, the plaintiff reentered his truck and drove it to the back of the motel where he parked it under a light.
After turning his engine off, Franklin exited the truck and began to unload his personal belongings. While removing his clothing from the cab, he noticed an individual walking around the front of his truck. The man who appeared was armed with a handgun and demanded Franklin's money. Franklin gave the perpetrator all the cash he had and was then shot in the abdomen. When the robber fled, Franklin pulled himself back into his truck and drove it to the front of the motel where the night desk clerk called the police and an ambulance.
Franklin and his wife maintained at trial that they were entitled to recover damages on the grounds that the Econolodge had breached its duty as an innkeeper to take reasonable precautions to protect its patrons against the criminal actions of third persons. The case was tried before a jury which returned a ten to two verdict in favor of the defendants. The Franklins then filed a motion for a judgment notwithstanding the verdict and alternatively, for a new trial. The Trial Judge denied both motions.
The plaintiffs and the intervenor sought this review and have assigned three errors. The appellants maintain:
(1) The jury was manifestly erroneous in concluding that the Econolodge had not breached its duty as an innkeeper to take reasonable precautions to protect Franklin from the criminal actions of third persons;
(2) The Trial Court erred in denying the plaintiffs' motion for a judgment notwithstanding the verdict and, alternatively, for a new trial; and
(3) The Trial Court erred in denying the plaintiffs' request that the jury be given three special charges.
*972 The plaintiffs' initial issue on appeal requires that we review the standard of care expected of innkeepers to protect their patrons from the criminal activities of third persons. The Louisiana Supreme Court in the case of Kraaz v. La Quinta Motor Inns, Inc., 410 So.2d 1048 (La.1982) set forth the applicable standard of care. The Kraaz Court held that innkeepers owe their guests a high degree of care and protection, and that reasonable precautions must be taken to protect patrons from the acts of criminals. The Court analogized the innkeeper's duty to that of a common carrier, but stated that an innkeeper does not insure its guests against the risk of injury or loss from violent crime.
During trial, the plaintiffs attempted to establish that Econolodge breached its duty to Franklin by showing that the risk of injury to the motel's patrons by criminals was great, and that the motel's management and owner were aware of the risk but did not take reasonable precautions. The Franklins proved that the Econolodge's office had been robbed by armed intruders on two occasions. The plaintiffs also established that Franklin was unable to enter the motel lobby because it was locked at night and had bars on the windows. It was further proven that as a protective measure for its employees, the motel's night desk clerk functioned through an "exchange window" which prevented physical contact.
The defendants acknowledged that the motel had been robbed twice and that security precautions had been taken to prevent further robberies. The robberies, however, were not recent, one having occurred in the late 1970's and the other three years later. The motel was quick to note that neither of these incidences involved its patrons.
The Econolodge also established that it had attempted to secure the premises. The motel had but one entrance and was entirely enclosed by an eight foot fence topped with three strands of barbed wire.
Lafayette City Police Sgt. Jim Craft, a ten-year veteran of the police force, testified for the plaintiffs as both a fact witness and an expert witness. Sgt. Craft testified that he investigated the Franklin robbery and that he had also investigated two other robberies at the motel. He testified, based upon his four to five years experience as a part-time hotel security guard, that a guard at the Econolodge would have prevented the Franklin shooting.
The defense countered Sgt. Craft's testimony by suggesting to the jury that the Sergeant held preconceived beliefs about the need for hotel security and by questioning the relevance of the two robberies of which he spoke. Counsel for Econolodge pointed out that it would have been adverse for Craft to testify to anything short of the need for a security guard because of his off-duty work as a hotel security guard. It was also established that one of the robberies of which Craft spoke was not the robbery of a patron or the motel, but rather, was a drug deal between patrons which had gone sour.
Dr. Jack Wright, Jr., an expert in the field of criminology and the foreseeability of crime, also testified on behalf of the plaintiffs. Dr. Wright was of the opinion that the Econolodge had not lived up to its duty to take reasonable precautions to protect Franklin against criminal assault. The witness based his opinion on the belief that the owner of the Econolodge was aware of criminal activity because of the security precautions it had provided for its employees and also because it had installed a surveillance camera system, although the cameras were no longer used because of poor quality.
Dr. Wright also based his opinion on a computer printout of crimes reported to the Lafayette City Police as having occurred at 1605 University Avenue, the address of the Econolodge. The printout was introduced into evidence by way of the testimony of Lafayette City Police Officer Ray Simon. Officer Simon testified that the printout was an accumulation of crimes reported between March 16, 1984 and June 1, 1986, a period of approximately twenty-seven months preceding the Franklin robbery.
The printout listed thirty-six crimes including the robbery of Franklin. This, the *973 plaintiffs argued, established a pattern of criminal activity, thereby dictating action on the part of Econolodge to secure its premises and protect its patrons.
Econolodge countered the plaintiffs' evidence by attempting to discredit the police printout. The defendants noted that Officer Simon did not state that the printout was an accumulation of crimes which had actually occurred on the motel premises, but rather, was an accumulation of crimes merely reported as having occurred at 1605 University Avenue. The defendants further observed the following: (1) the crimes on the printout ranged from littering and disturbing the peace to armed robbery; (2) the mere reporting of an alleged crime is not proof of an actual criminal act; (3) less than one-half of the reported crimes, fifteen to be exact, were crimes against people, as opposed to crimes against property; (4) no distinction was drawn between crimes allegedly committed against hotel patrons and those which were committed in the restaurant or lounge which, although not part of the Econolodge business, were physically connected to the premises; (5) seven of the crimes, two thefts and five burglaries, occurred on just two days; and (6) no distinction was made between criminal acts allegedly perpetrated against patrons by third persons and those criminal acts which might have occurred strictly between patrons and those which might have been strictly between nonpatrons. Cf., Banks v. Hyatt Corporation, 722 F.2d 214 (5th Cir.1984); Landry v. St. Charles Inn, Inc., 446 So.2d 1246 (La.App. 4th Cir. 1984). The defendants also established, by way of cross-examination, that the printout contained errors. For example, the armed robbery of Franklin was listed as an aggravated battery.
Dr. Wright's testimony, particularly on cross-examination, was not entirely advantageous to the plaintiffs' case. The expert testified that because the hotel had only one entrance and was entirely fenced it was a "fort" and could be easily protected. Dr. Wright also stated that it was more likely than not that the perpetrator of the crime came and left by automobile. Dr. Wright noted that the perpetrator was probably not another motel guest and that he probably did not enter and leave the premises by climbing the fence.
Possibly the most damaging testimony to the plaintiffs' case was evidence that the plaintiff may have been stalked by the perpetrator and followed onto the hotel premises. Dr. Wright and Sgt. Craft both testified that the Econolodge night desk clerk, Meaux, told them that he noticed a car pull up behind Franklin's tractor-trailer when Franklin drove onto the premises and that he saw the car speed by the truck as Franklin drove to the rear of the premises. Sgt. Craft also stated that Meaux told him that shortly after he heard what was apparently Franklin being shot he saw a blue or green General Motors vehicle leaving the parking lot.
Franklin testified that he was not aware that an automobile may have followed him onto the premises, but he did see a car speed by him as he drove to his room. The plaintiff stated that the car drove all the way to the end of the motel property and that he saw an individual exit the vehicle and walk toward the motel.
Subsequent to our review of the above evidence, we cannot state that the jury was manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Although the plaintiffs presented considerable evidence in support of their case, we do not believe the evidence is sufficient for us to conclude that the jury was clearly wrong.
The appellants' second issue on appeal calls into question the decision of the Trial Judge denying their motion for a judgment notwithstanding the verdict and for a new trial. Subsequent to our review of the law and the evidence, we do not believe the Trial Judge erred.
La.Code Civ.Proc. art. 1811 (1960) (amended 1979, 1983 and 1984) grants the losing party the right to request that the trial judge render judgment in his favor despite the decision of the jury. The applicable standard to be applied by the trial judge is as follows:

*974 a JNOV should be granted only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover.
Robertson v. Penn, 472 So.2d 927, 929 (La. App. 1st Cir.1985), writ denied, 476 So.2d 353 (La.1985). On review, our responsibility is to scrutinize the trial record and determine whether the lower court was manifestly erroneous. Robertson, id.
The Trial Judge, in a Minute Entry denying both of the plaintiffs' motions, concluded that "reasonable minds could differ on the fact and liability issues in this matter, and that the jury verdict was within reasonable limits and judgment...." Upon our review of the record, we are unable to conclude that he was clearly wrong in denying the plaintiffs' motion for a judgment notwithstanding the verdict.
La.Code Civ.Proc. art. 1972 (1960) (amended 1983), establishing the grounds for a nondiscretionary new trial, provides, in part:
A new trial shall be granted ... in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence. (emphasis added).
In the instant case, the Trial Judge expressed an opinion that the verdict would have been different had it been a bench trial, but he did not state that he believed the verdict was clearly contrary to the law and the evidence. See Hefner v. B.J. McAdams, Inc., 487 So.2d 505 (La.App. 3rd Cir.1986); Riddle v. Menard, 355 So.2d 1350 (La.App. 3rd Cir.1978), writ denied, 359 So.2d 627 (La.1978). Subsequent to our review of the evidence, we are unable to conclude that the Trial Judge abused his discretion. Miller v. Chicago Insurance Company, 320 So.2d 134 (La.1975); Core v. Winn-Dixie of Louisiana, Inc., 471 So.2d 240 (La.App. 1st Cir.1985), writ denied, 476 So.2d 353 (La.1985).
The appellants maintain in their final issue on appeal that the Trial Judge erred in failing to give three of their requested jury charges. The plaintiffs, subsequent to the charging of the jury, but prior to deliberations, objected to the Court's refusal to instruct the jury in accordance with their requested jury charges numbered three, four and five. The Judge responded by stating that the requested charges were adequately covered in the instructions he read to the jury.
We have previously held that trial judges are not obligated to give the precise instructions requested by the parties, but are only required to give instructions to the jury which properly reflect the law applicable in view of the pleadings and facts of a particular case. Kaplan v. Missouri-Pacific Railroad Company, 409 So.2d 298 (La.App. 3rd Cir.1981), writ denied, 411 So.2d 464 (La.1982). Adequate instructions are those which "fairly and reasonably point up the issues presented by the pleadings and evidence and which provide correct principles of law for the jury's application thereto." Kaplan, id. at 305; Miller v. Fogleman Truck Lines, Inc., 398 So.2d 634 (La.App. 3rd Cir.1981), writ denied, 401 So.2d 358 (La.1981).
The Trial Court charged the jury with respect to an innkeeper's duty as follows:
The law applicable to plaintiffs' claim depends upon the nature of that claim. This is a suit seeking damages for injury caused by the act of another. The basic law in Louisiana in this type of suit is found in Article 2315 of our Civil Code, which says, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The word "fault" in that Article is a key word. While the Civil Code does not further define the word, it may perhaps be best explained by saying that it signifies that conduct which a person should not have engaged in. That is, that he did something which he should not have done, or that he failed to do something that he should have done. It is, thus, the conduct below the standard the law deems applicable to his activities. Now, this standard which applies to defendant's *975 conduct, will vary according to the conduct in which he is engaged and the circumstances surrounding the conduct. Under Louisiana law, the general or basic standard applicable to the requirement that a particular defendant exercise that degree of care which we find reasonably expected from an ordinary prudent person under the same or similar circumstances. In this case, the standard of care which Louisiana places on innkeepers to protect its guests is to exercise a higher degree of care than ordinary or reasonable care.
Now, to understand ordinary or reasonable care let me explain that the ordinary, prudent person will avoid creating an unreasonable risk of harm. In determining whether the defendant breached this standard and created an unreasonable risk of harm, you may weigh the likelihood that someone might have been injured and the seriousness of that injury against the importance to society of what the defendant was doing and the advisability of the way in which he was doing it under the circumstances. An innkeeper does not insure his guests against the risk of injury or property loss resulting from violent crime. A guest is entitled to a high degree of care and protection. The innkeeper has a duty to take reasonable precautions against criminals. (Emphasis added).
The plaintiffs' requested jury charge number three, as taken from the trial transcript, read as follows:
"An owner of a business cannot be liable for a third party assault against an invitee unless the business has actual reputed knowledge of the impending assault.... An inkeeper, however, may be liable if he refuses to take reasonable precautions to deter the type of criminal activity which results in the guests' injuries.["]
Subsequent to our review of the law, the actual charge, and the requested charge, we do not believe the Trial Court erred.
We have not addressed the plaintiffs' requested jury charges numbered four and five because an exhaustive search of the trial record did not reveal them. We can only conclude that they were not filed.
For the above and foregoing reasons the judgment of the District Court is affirmed.
All costs of this appeal are equally assessed against Euel Franklin, Sue Franklin and Roadway Services, Inc.
AFFIRMED.