468 So.2d 1241 (1985)
Anne GURDIN
v.
Dr. Gene L. DONGIEUX.
No. CA-2746.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1985.
Rehearing Denied May 29, 1985.
*1242 Edmond J. Harris, Heisler & Wysocki, New Orleans, for plaintiff-appellant, Anne Gurdin.
Albert H. Hanemann, Jr., Randall A. Fish, Lemle, Kelleher, Kohlmeyer, Hunley, Moss & Firlot, New Orleans, for defendants-appellees, Dr. Gene L. Dongieux and St. Paul Fire and Marine Ins. Co.
Before BARRY, BYRNES and WARD, JJ.
BARRY, Judge.
Plaintiff appeals a directed verdict which dismissed her dental malpractice claims. We affirm.
In January, 1980 plaintiff began orthodontic treatment with the defendant, Dr. Dongieux, to correct "buck" teeth and place her mouth in centric relation. Treatment continued through July, 1981 when the braces were removed and a finishing device, "positioner", was employed. The positioner was replaced by a "retainer" in December, 1981. In January, 1982 plaintiff consulted her dentist, Dr. Tusa, to bring her teeth into proper occlusion by equilibration. Dr. Tusa discovered he could not achieve the desired occlusion and recommended further orthodontic work. Dr. Dongieux installed braces on the upper teeth on July 20, 1982 (at Dr. Tusa's request) and continued to treat plaintiff until September 15, 1982 when she consulted another orthodontist, Dr. Gottsegen. Dr. Gottsegen removed the braces and provided further treatment.
On April 20, 1983 plaintiff sued Dr. Dongieux alleging malpractice. The petition claims that due to defendant's failure to *1243 exercise the standard of care ordinarily exercised by orthodontists, plaintiff was forced to undergo additional treatment and suffered gum recession and root exposure which necessitated corrective surgery. On January 19, 1984 plaintiff filed a supplemental petition alleging defendant failed to obtain plaintiff's informed consent to the treatment. Defendant filed an exception of prescription to the informed consent action which was referred to the merits.
The case went to trial on February 27, 1984. Following plaintiff's evidence on February 28 defendant moved for a directed verdict. The trial judge denied the motion and scheduled closing arguments the next morning. During the evening of February 28 defendant's trial counsel suffered a back injury which prevented his appearance the next day. On February 29, after learning of counsel's injury, the judge announced his intention to hold the trial open for an additional day for closing arguments. In the course of explaining the delay to the jury, the judge made several gratuitous comments and plaintiff requested a mistrial. After a conference in chambers, the judge agreed and told counsel he would order a mistrial.
That afternoon defendant's trial counsel contacted the judge by telephone and persuaded him to reverse the mistrial order. The next morning, March 1, the trial judge informed plaintiff, in chambers, of his decision to reverse the mistrial and allow the case to go to the jury. (The jury was not informed of the mistrial). At that point defendant reurged the motion for directed verdict, which was granted.
Plaintiff presents seven specifications of error. The first six claim procedural errors by the judge before, during, and after trial.
The first specification alleges the court pre-judged the case by announcing in pre-trial conference that plaintiff would be wise to accept defendant's offer of settlement because regardless of the jury's decision, that was the maximum amount she would be awarded. Damages were never reached, hence, plaintiff was not prejudiced.
Plaintiff's second specification claims the trial judge erred in prohibiting plaintiff's counsel from questioning plaintiff's mother regarding the lack of plaintiff's informed consent. Plaintiff alleges that during an off-the-record bench conference, the trial judge instructed counsel that he would not allow questions regarding the issue of informed consent, only general questions about warnings or the lack thereof. The record does not document such direction by the judge. If such an instruction was given, it was incumbent upon counsel to enter his objection on the record and make a proffer of the excluded evidence. La.C.C.P. Art. 1636. As this court noted in Grusich v. Grusich, 447 So.2d 93, 96 (La.App. 4th Cir.1984): "It is incumbent upon counsel who contends his evidence was improperly excluded to make a proffer, and if he fails to do so, he cannot contend such exclusion was error." Plaintiff's counsel did not make a proffer and waived his right to appellate review.
Plaintiff's next specification addresses the trial judge's refusal to allow plaintiff to enter "extensive objections in the record." Apparently, on the morning of February 29 before the jury reconvened for closing arguments, plaintiff's attorney attempted to raise objections for the record. The trial judge ordered the court reporter to stop transcribing the argument. Plaintiff's counsel objected and thereafter attempted to depose the court reporter in order to preserve the objections. The trial judge quashed the deposition.
Plaintiff's brief does not explain what his objections were and how the refusal affected the case. The proceedings occurred outside the presence of the jury and after both sides had rested. In the absence of prejudicial error we will not disturb the ruling. Johnson v. Morris, 431 So.2d 429 (La.App. 4th Cir.1983).
Plaintiff's fourth and fifth specifications complain that the trial judge made complimentary gratuitous comments about the defendant in the presence of the jury *1244 and thereafter reversed the order of mistrial. The trial judge told the jury that defendant was a very busy doctor with a waiting room full of patients who needed him and for that reason could not be present during closing arguments. Plaintiff submits such a statement was proper grounds for a mistrial and it was further error to reverse the mistrial order after a private conversation with defense counsel.
There is ample authority to support a mistrial when an action or comment by the trial judge so prejudices a party's case that justice may not be done if the trial is continued. Spencer v. Children's Hospital, 432 So.2d 823 (La.1983). We agree the comments and phone call were clearly improper, however, because we conclude a directed verdict was appropriate the prejudicial actions are immaterial.
Defendant's final specification alleges the trial judge erred in directing a verdict for defendant.[1]
The standard for granting a directed verdict in a jury case was set forth in Ragas v. Argonaut-Southwest Insurance Co., 379 So.2d 822 (La.App. 4th Cir.1980). Ragas looked to federal jurisprudence on this relatively new procedure created by La.C.C.P. Art. 1810 in 1977. Quoting from Boeing Company v. Shipman, 411 F.2d 365 (5th Cir.1969), Ragas held:
"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury." Ragas v. Argonaut-Southwest Insurance Co., supra at 823-824.[2]
Plaintiff's petition asserts two causes of action: dental malpractice in contravention of La.R.S. 9:2794 and failure to obtain informed consent in violation of La.R.S. 40:1299.40.
In the malpractice action the burden is on plaintiff to establish defendant's deviation from the standard of care required of others practicing in his same field. La.R.S. 9:2794(C); Wiley v. Karam, 421 So.2d 294 (La.App. 1st Cir.1982). The elements of proof are in La.R.S. 9:2794(A):
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians or dentists licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians or dentists within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the *1245 plaintiff suffered injuries that would not otherwise have been incurred.
In determining whether a defendant possessed the requisite degree of knowledge or skill or whether he exercised reasonable care and diligence, the court is guided by expert witnesses who are members of defendant's profession and who are qualified to testify. Steinbach v. Barfield, 428 So.2d 915 (La.App. 1st Cir.1983); Wiley v. Karam, supra; Guillory v. Buller, 398 So.2d 43 (La.App. 3rd Cir.1981).
Three dentists testified that defendant's treatment was unsuccessful, but none said it was negligent or fell below the standard ordinarily exercised by orthodontists. Plaintiff's treating orthodontist, Dr. Gottsegen, repeatedly refused to characterize defendant's treatment as negligent and in a video deposition explained:
"The treatment that was rendered, in my opinion, was clearly unsuccessful; however, it's not the same to say that the treatment was unsuccessful and there was necessarily a breach of the normal standard of care in the community.
Sometimes, and this is true of all orthodontists, all orthodontists have some treatment results which are clearly unsuccessful, and often it's due to factors which don't reflect a breach of the normal standard of care ...
I do know that there are problems that are inherent in the patient's condition which are conducive to relapse and concerns down the road, and yet I'm really unable to say whether there was negligence in the treatment or not."
Thus, the best that was said for plaintiff is her treatment was unsuccessful. Unsuccessful treatment is not per se an indication of malpractice. Chaney v. State through Department of Health and Human Resources, 432 So.2d 256 (La.1983); Gunter v. Plauche, 439 So.2d 437 (La. 1983).
In the absence of any testimony that defendant lacked the degree of knowledge or skill ordinarily practiced by orthodontists, or he failed to use reasonable care and diligence, we must conclude the trial judge properly granted a directed verdict as to the malpractice action, despite the several irregular trial procedures specified above.
Plaintiff alleges defendant failed to inform her of the known possibility of gum recession and root resorption, and if she had known she would not have undergone treatment. As a result of the treatment she suffered gum recession and root resorption which necessitated gum grafts and brought about the possibility of losing her teeth. Thus, plaintiff clearly states a cause of action based on lack of informed consent, and there is ample evidence to support this claim. However, because we find this action has prescribed, it is unnecessary to consider whether the directed verdict was proper.
Plaintiff filed suit on April 20, 1983 alleging malpractice and amended the petition on January 19, 1984 to add a claim for lack of informed consent. Defendant's exception of prescription to the informed consent action was referred to the merits and overruled.
The prescriptive period for medical malpractice and lack of informed consent is La.R.S. 9:5628:
A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
B. The provisions of this Section shall apply to all persons whether or not *1246 infirm or under disability of any kind and including minors and interdicts.
The statute provides that "in all events" the action must be filed within three years from the date of the alleged act, omission or neglect. The alleged acts, omissions or neglect occurred sometime between July 9, 1979 when the first consultation took place, and March 19, 1980 when the final appliances were put on the lower teeth. Plaintiff's suit was filed April 20, 1983 and the amended petition on January 19, 1984. The trial court properly ruled that the amended petition on January 19, 1984 related back to the April 20, 1983 filing, Gunter v. Plauche, supra. However, the initial filing was outside the three year period[3] and has prescribed.[4]
The judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] In another assignment plaintiff complains that the trial judge failed to fix the time to file writs. Despite that fact plaintiff filed writs which were denied.
[2] This test has been cited in Breithaupt v. Sellers, 390 So.2d 870 (La.1980), and adopted by the courts of appeals. Theriot v. St. Martin Parish School Board, 434 So.2d 668 (La.App. 3rd Cir. 1983); Brown v. Soupenne, 416 So.2d 170 (La. App. 4th Cir.1982).
[3] We note the constitutionality of La.R.S. 9:5628 is being considered in Crier v. Whitecloud, 455 So.2d 1279 (La.App. 4th Cir.1984), writ granted 460 So.2d 594 (La.1984).
[4] Plaintiff's cause of action for malpractice also prescribed; however, this prescription was not raised and we are without authority to supply the plea. La.C.C.P. Art. 927.