CIACCIO, Judge.
Plaintiffs, Rhonda and Steven Olson, appeal the trial court’s granting of a directed verdict in favor of defendant, Dr. James Beilina, in this medical malpractice case. We affirm.
On April 26, 1984, Dr. Beilina, an obstetrician-gynecologist, performed a circumcision on plaintiffs’ newly born son, Ivan Olson, using a device called the Hollister Plastibell (hereinafter “plastibell”). The plastibell is a soft plastic device that is shaped similar to a thimble, but it is open on both ends. The narrower end is known as the distal end. The plastibell, available in five sizes, is sized in centimeters according to the diameter of the opening of the device. When performing a circumcision, the glans (head) of the penis is inserted into the plastibell through the larger opening until it slightly protrudes out the distal end. The foreskin is then pulled over the plastibell, and a ligature is tied over the foreskin. The part of the foreskin that becomes separated from the blood supply by the tied ligature dies and falls off. The ligature is then loosened, and the plastibell and ligature fall from the penis. If the wrong size plastibell is used it could result in the strangulation of the glans of the penis.
Prior to performing the circumcision, Dr. Beilina advised Mrs. Olson that the plasti-bell should fall off within four or five days and that if there were any signs of bleeding, infection, or pus or if the plastibell did not fall off, she should notify him. On May 1, 1984, five days after the circumcision, Mrs. Olson called Dr. Beilina’s office and stated that the ligature had fallen off and asked if she should be concerned. She was told that the plastibell would fall off shortly. She telephoned Dr. Beilina’s office again on May 7 because the plastibell still had not fallen off. On May 14, eighteen days after the circumcision, Mrs. Olson brought Ivan to Dr. Beilina’s office. The plastibell was slightly stuck to the glans of the child’s penis by accumulated body secretions. Dr. Beilina removed the plastibell and there remained a slight blemish or ridge around the glans of the penis.
Mr. and Mrs. Olson filed a medical malpractice suit against Dr. Beilina alleging that he improperly used the wrong size plastibell in performing the circumcision which resulted in a permanent disfiguring injury to the child’s penis. The matter went to trial before a jury on May 19, 1988. After plaintiffs presented their case, the defendant moved for and was granted a directed verdict. Plaintiffs now appeal.
On appeal, plaintiffs assert that the trial judge used an improper standard in ruling on the motion for a directed verdict. They argue the trial judge, after considering all the evidence, resolved all reasonable inferences of fact in a light most favorable to the moving party, the defendants, rather than the opposing party, them.
*451 Pursuant to LSA-C.C.P. art. 1810, a directed verdict may be granted in favor of the moving party if the facts and reasonable inferences taken from the evidence are so overwhelmingly in favor of the moving party that the trial judge believes that reasonable men could not arrive at a contrary verdict. Leiva v. Nance, 506 So.2d 131 (La.App. 4th Cir.1987). In jury trials, the judge should view the evidence in a light most favorable to the non-moving party in ruling on the motion for a directed verdict. id. Therefore, on appeal we must review and interpret the facts and evidence in a light most favorable to the plaintiffs to determine whether the motion was properly granted. Grimes v. Stander, 394 So.2d 1332 (La.App. 1st Cir.1981).
In a medical malpractice case, plaintiffs bear the burden of proving that the defendant’s conduct was below the standard of care required of others within his same specialty. LSA—R.S. 9:2794; Gurdin v. Dongieux, 468 So.2d 1241 (La.App. 4th Cir.1985), writ denied, 474 So.2d 946 (La.1985). In determining whether a defendant possessed the requisite degree of knowledge or skill or whether he exercised reasonable care and diligence, the court is guided by expert witnesses who are members of defendant’s profession and who are qualified to testify. Leiva v. Nance.
The bulk of plaintiff’s case consisted of the testimony of Dr. Beilina, and the testimony of Dr. Robert Leland Guy, a pediatrician.
Dr. Beilina testified that in his eight years of practice he had performed at least 800 circumcisions and had never had any complications with the use of the plastibell. According to Dr. Beilina, he was well aware that the risks associated with the use of the plastibell were bleeding and infection. He stated that the glans of the penis could be injured if the wrong size plastibell was used, if the device was placed incorrectly on the penis and if the ligature was not properly tied. He further testified that when he removed the plasti-bell from the child’s penis on May 14 there was accumulated body secretions but there were no signs of infection or bleeding. Dr. Beilina stated that, prior to performing the circumcision, he informed Mrs. Olson that her son would have the plastibell on his penis for several days, that she should keep it clean and that the plastibell would fall off by itself. He had also provided her with written instructions on circumcision care.
Dr. Guy, the infant’s pediatrician, testified that he had performed several hundred circumcisions and in 50 to 100 of those the Hollister Plastibell was used. He stated that when he examined Ivan on May 16, 1984, there appeared to be a blemish or slight ridge on the tip of the child’s penis but that there were no lacerations, infection or bleeding. He examined the child again on June 25,1984. There appeared no discoloration and he noted that the glans was healing well. Dr. Guy testified that if the plastibell had slipped onto the shaft of the penis two things would have occurred. There would have been a drastic reduction of blood flow to the glans of the child’s penis and an infection. He stated neither of these signs were present when he examined the child on May 16 and June 25. He said he did not observe anything that would have indicated that the plastibell was installed improperly on the head of the penis or that it had slipped onto the shaft of the child’s penis or that it was too small or too tight. Dr. Guy opined that Dr. Beili-na would not have been able to anticipate that a ridge or groove could be created by the use of the Hollister plastibell.
In light of the medical testimony and other evidence presented in the instant case, we find no support for a legal conclusion that Dr. Beilina breached the standard of care required of others within his same specialty. We conclude, as did the trial judge, that reasonable triers of fact could not arrive at a contrary verdict.
Accordingly, the trial judge’s granting of the directed verdict in favor of Dr. Beilina is affirmed.
AFFIRMED.