ARMSTRONG, Judge.
Plaintiff, Carmel Vila, appeals from a judgment dismissing her malpractice claims against defendant, Dr. William E. Faget, a dentist, and his insurers, New England Reinsurance Company, Continental Casualty Insurance Company, and National Union Fire Insurance Company. We now affirm the judgment of the trial court.
Dr. Faget treated plaintiff from August 1978 through January 1986. In March 1986 she sought treatment from another dentist, Dr. Richard F. Gruner. Dr. Gruner eventually had to extract three of plaintiff’s teeth, replacing them with a partial bridge. Dr. Gruner blamed the loss on Dr. Faget’s treatment which he characterized as below the standard of care possessed by a general dentist practicing in New Orleans. Plaintiff submitted the case to a medical review panel[1] which found that Dr. Faget’s treatment of plaintiff had not been below the applicable standard of care. On November 7, 1987, plaintiff instituted the instant action.
On appeal, plaintiff raises two assignments of error. She claims the trial court erred (1) in allowing Dr. Marvin Cavallino, a pediatric dentist, to testify as an expert; and (2) in failing to find that she proved by a preponderance of the evidence that Dr. Faget’s treatment of her fell below the applicable standard of care.
To recover damages in a dental malpractice action, La.R.S. 9:2794(A) places the burden on the plaintiff to prove each of the following:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by ... dentists ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and- where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by ... dentists ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
*390 The burden is upon the plaintiff to establish the dentist’s negligence by a preponderance of the evidence. La.R.S. 9:2794(C). Proof of the knowledge, skill or degree of care and the failure of the dentist to possess or meet them are established through the expert testimony of witnesses who are members of the defendant’s profession and who are qualified to testify. Gurdin v. Dongieux, 468 So.2d 1241 (La.App. 4th Cir.1985), writ denied, 474 So.2d 946 (La.1985).
Dr. Marvin Cavallino testified on behalf of defendant. Cavallino was board certified in the field of pediatric dentistry and had been practicing in that field since 1971. Prior to 1971 he practiced general dentistry. Dr. Cavallino testified that the whole thrust of pediatric dentistry was the prevention of dental problems. Pediatric dentistry programs provide instruction to both parents and children on proper cleaning techniques for the prevention of dental problems. Dr. Cavallino taught dental cleaning to adults only in conjunction with his instruction of their children. Over the objection of plaintiff’s counsel, the trial court qualified Dr. Cavallino as an expert in dental hygiene as it related to both adults and children. The trial court further recognized Cavallino as an expert in the field of pediatric dentistry with an expertise in preventive dentistry. Plaintiff argues that Cavallino was not qualified to testify because the issue before the court was the skill and standard of care of a general dentist, not that of a pediatric dentist.
The qualification of an expert witness rests within the sound discretion of the trial court, and its decision whether to qualify a witness will not be disturbed unless it is a clear abuse of discretion. Roberts v. Tiny Tim Thrifty Check, 367 So.2d 64 (La.App. 4th Cir.1979); Frank L. Beier Radio, Inc. v. Brown, 453 So.2d 656 (La.App. 5th Cir.1984), writ denied, 458 So.2d 121 (La.1984). See also Comment (d) to La.C.E. art. 702.
A specialist is not automatically excluded from testifying in a malpractice suit involving a general practitioner; the specialist’s qualification to testify must be determined on a case-by-case basis. McLean v. Hunter, 495 So.2d 1298 (La.1986). In McLean, a periodontist was qualified as an expert in periodontics in the trial of a malpractice suit against a general dental practitioner. The suit had been instituted by a patient who had allegedly developed periodontal disease while being treated by the dentist. The trial court refused to allow the expert to testify as to the standard of care exercised by a dentist engaged in the practice of general dentistry. On appeal, the appellate court found that the trial court had erred in refusing to allow such testimony in evidence. In its decision affirming the holding by the appellate court, the Louisiana Supreme Court quoted as follows from a California appellate court decision addressing the identical issue:
To qualify a witness as a medical expert, it must be shown that the witness (1) has the required professional knowledge, learning and skill of the subject under inquiry sufficient to qualify him to speak with authority on the subject; and (2) is familiar with the standard required of a physician under similar circumstances; where a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than to its admissibility.
In the instant case, the record reflects that Dr. Cavallino was qualified to testify on the standard required of a dentist practicing general dentistry in the New Orleans area. Moreover, he did not actually give an opinion that overall, Dr. Faget’s treatment of plaintiff met the applicable standard of care. His opinions were limited to specific areas of treatment. Under these circumstances, we cannot say that the trial court abused its discretion in qualifying Dr. Cavallino as an expert witness.
At trial, plaintiff sought to prove Dr. Faget’s negligence by showing that he failed to take a proper medical history; he did not have an adequate recall system; he failed to adequately instruct plaintiff on dental hygiene practices — brushing and flossing; and his diagnosis and treatment *391 of plaintiff’s dental problems, particularly periodontal disease, otherwise fell below the standard of care practiced by general dental practitioners in the New Orleans area. Dr. Faget sought to defend against these claims by portraying plaintiff as an uncooperative patient with poor dental hygiene practices.
After being treated by defendant from August 1978 to January 1986, plaintiff sought treatment from Dr. Richard F. Gruner. Dr. Gruner testified at trial and was qualified as an expert in the field of general dentistry. Dr. Gruner testified that plaintiffs mouth was in “very poor condition” when he first examined her in March 1986. Her gums were red and swollen and she had calculus on her teeth. He also found numerous mobile teeth. Dr. Gruner stated that plaintiff required “extensive” periodontal involvement. He said Dr. Faget’s overall treatment of plaintiff fell below the standard of care expected of a dentist practicing general dentistry in the New Orleans area because there were a number of disease processes that were never addressed, diagnosed, treated or referred for treatment.
Much of Dr. Gruner’s testimony was directed to interpreting X-rays taken by Dr. Faget. A July 1982 X-ray taken by Dr. Faget showed decay in tooth No. 13. Dr. Gruner’s X-ray taken in March 1986 showed “the same decay.” It was Dr. Gruner’s opinion that Dr. Faget did not treat the decayed area shown in the July 1982 X-ray. Dr. Gruner cited other examples of problems not being treated. In particular, he noted on a February 1984 X-ray by Dr. Faget that there were periapical abscesses on teeth Nos. 3, 14, and 15. Plaintiff ultimately lost teeth Nos. 3 and 15 because of this periodontal disease. She also lost tooth No. 14, but he said it was lost primarily due to a hole in the tooth which extended all the way through the tooth and into the root. Dr. Gruner speculated that it had taken a long time for the tooth to decay to that degree. It was Dr. Gruner’s opinion that these three teeth were lost as a result of treatment below the standard of care expected of dentists practicing general dentistry in New Orleans. He believed Dr. Faget should have seen the problems revealed by his own X-rays and told plaintiff about them or treated them.
Dr. Gruner also found heavy calculus on plaintiff’s teeth. It took three office visits to properly clean plaintiff’s teeth. He attributed two of these cleanings to Dr. Fag-et’s lack of treatment. He said that if a dentist examines teeth and feels they are in need of cleaning, there is a duty to tell the patient her teeth need cleaning. He said there was nothing in Dr. Faget’s records to indicate that he told plaintiff to return for teeth cleanings. He further stated that insofar as his treatment of plaintiff, she had never turned down treatment for financial reasons. He also said that her oral hygiene was much better at the time of trial than when she first came to see him.
Dr. Robert J. Gaffney was qualified by plaintiff as an expert witness in the field of general dentistry. Dr. Gaffney served on the medical review panel which had unanimously concluded that there was no support for a finding that Dr. Faget was negligent. Since then, Dr. Gaffney said, he had changed his mind. It was his opinion that Dr. Faget’s treatment fell below the standard of care expected of general dentistry practitioners. He believed the loss of teeth Nos. 3, 14, 15 and 31 were the result of poor diagnosis by Dr. Faget. He said it was hard to believe that Dr. Faget had a full comprehension of periodontal disease. He had problems believing that Dr. Faget referred plaintiff to a periodontist because he felt Dr. Faget didn’t even know how to diagnose periodontal disease. He noted that Dr. Faget’s records did not reflect that he had either diagnosed the disease or referred plaintiff to a periodontist.
Dr. Lloyd M. Magruder testified on behalf of Dr. Faget. He stated on direct examination that it was his opinion that Dr. Faget complied with the applicable standard of care. However, on cross-examination he admitted that Dr. Faget’s records did not reflect that he had diagnosed periodontal disease. Asked how he could deduce that Dr. Faget had to have told plaintiff about her periodontal problems, he *392 stated: “Because she had a periapical infection. He had to tell her what it was, don’t you think?” In other words, Dr. Magruder simply assumed that it was not possible that Dr. Faget failed to diagnose the periodontal disease.
Dr. Magruder was shown Dr. Faget’s X-rays from July 1982 and Dr. Gruner’s X-rays from 1986 and asked about the decay on tooth No. 13. Dr. Magruder testified that it was his opinion that Dr. Faget probably did not completely fill the cavity depicted on the 1982 X-ray. Counsel for plaintiff directed Dr. Magruder’s attention to a deposition statement by Dr. Faget that as of June 1983, he considered tooth No. 14 “condemned” and that plaintiff would eventually lose that tooth to periodontal disease. Dr. Magruder viewed Dr. Faget’s 1982 X-ray which showed nothing that should have condemned the tooth. Viewing the 1984 X-ray by Dr. Faget, Dr. Ma-gruder stated that, although it showed a periapical abcess on the tooth — periodontal disease — this did not necessarily mean that the tooth was condemned and would eventually be lost. Dr. Magruder agreed that Dr. Faget was wrong to conclude that the tooth was condemned. He admitted that if a dentist were treating a cavity-prone patient and over different visits noticed calculus building up on her teeth, the applicable standard of care would require the dentist to advise the patient that her teeth needed cleaning. Dr. Magruder said that, considering Dr. Faget’s records, he would have expected him to notice the calculus buildup and advised plaintiff to come in for a cleaning. He said if Dr. Faget did not do this, his treatment fell below the applicable standard of care.
Dr. Magruder further testified that Dr. Faget’s treatment would be below the applicable standard of care if he: (1) did not detect the periapical abscesses; (2) detected but did not inform plaintiff about his findings; or (3) either did not treat the abscesses, or did not refer her to a periodontist. On redirect examination Dr. Magruder agreed that Dr. Faget’s records, viewed alone, did not establish that he failed to comply with applicable standard of care.
Dr. Dan S. Lehon was also qualified as an expert in the field of general dentistry by defendant. Dr. Lehon had been selected by defendant to be on the medical review panel. It was his opinion as a member of that panel that Dr. Faget complied with the applicable standard of care. Dr. Lehon stated that the standard of care is met if a dentist reminds a patient only once about proper dental hygiene. He said he instructs patients how to floss but that not all compliant dentists do so. He said that he has had patients who only came in for problems — not for regular prophylactic cleanings and examinations. He also said he had patients in the past who refused treatment for financial reasons. Dr. Lehon said he would not fault a dentist who continued to treat a patient even though that patient did not follow his advice.
Dr. Lehon admitted there was nothing in Dr. Faget’s record to indicate that plaintiff would not listen to Dr. Faget’s advice. He could not point to one instance where Dr. Faget told plaintiff to do something and she failed to follow his instruction. Dr. Lehon confessed that he gives the benefit of the doubt to the dentist, but he still felt that he had been impartial.
The last expert in general dentistry to testify was Dr. Ernest M. Conzelmann. Dr. Conzelmann said that if calculus had built up over a 23-month period he would have informed the patient once to get her teeth cleaned. He said he would not repeat this advice everytime the patient came in. He said once is sufficient for adult patients to be told to return for an appointment. He further stated that it was alright for patients to pick out their own date for an appointment. Like Dr. Lehon, Dr. Conzel-mann said he continues to try and treat bad patients, i.e., patients who do not follow his advice. He found it unusual that plaintiff did not know how to floss. Dr. Conzel-mann said that there nothing in Dr. Faget’s records to indicate that plaintiff was a bad patient except that her teeth had not been properly cleaned over the years. This was an apparent reference to Dr. Faget’s records containing only one notation of a teeth cleaning. He also admitted there was no evidence in those records that plain *393 tiff chose not to receive any specific treatment recommended by Dr. Faget. He did say the record showed it took plaintiff “forever” to pay a relatively small sum for one treatment. Dr. Conzelmann said that Dr. Faget did the best he could in the situation. He said you could probably pull out any patient and say a dentist didn’t do it properly regarding the amount of the filling and the condition of the teeth, etc.
Dr. William Faget graduated from dental school in 1948 and has been practicing general dentistry since then. He is a sole practitioner with no hygienist. His wife is his office manager. He said that plaintiff would come in for check-ups every so often when she had problems. He would take care of her problems and encourage her to return. From 1978 to 1986, he said, plaintiff came in only five times for prophylactic treatment, despite his recommendations that she come in more often. He testified that he informed plaintiff that she needed periodontal treatment. He said his treatment of her depended on her getting periodontal treatment. He testified that as of August 1982, tooth No. 15 showed evidence of periodontal problems. At that time, he said he recommended to plaintiff that she see a periodontist, but did not recommend anyone in particular. He said he thought he remembered telling plaintiff that if she did not improve her oral hygiene, a periodontist would not help. He admitted that plaintiff complained to him about her gums throughout his treatment of her. She started having more trouble as time went on. He said her gums were bleeding so badly that he “thought she had problems.” He also said she probably complained to him about loose teeth throughout his treatment. Dr. Faget testified that he never held himself out as a periodontist. He said he suggested flossing and the use of another similar material to clean plaintiffs teeth. He said he did not think plaintiff was following his instructions to floss. He stated it was hard to say whether she was brushing effectively.
Dr. Faget testified that after every prophylactic cleaning of plaintiff he recommended that she make a return appointment for the next cleaning. He said that “sometimes” she complied. During the twenty-three month period from her last prophylactic cleaning to Dr. Gruner’s first treatment, Dr. Faget treated plaintiff four times. He said he “suggested” on each of these occasions that plaintiff come in for prophylactic cleanings. She failed to do so. He said he did not see her as often as he would have liked for prophylactics, and that he was not surprised that Dr. Gruner found heavy calculus on plaintiffs teeth.
He admitted that tooth No. 3 was perio-dontally involved “at an early point,” but he did not make a notation of the periodontal problem in his records until February 1984. He said he specifically recommended to plaintiff that she see a periodontist about that tooth. He said there were two problems with that tooth, a cavity and the periodontal disease. Dr. Faget stated that a root canal on tooth No. 3 would have been a waste of time and money because of the periodontal disease. Instead he filled the tooth. He admitted that “maybe” the tooth could have been saved if he had told plaintiff she had periodontal problems and that she had to have them taken care of or she would lose the tooth. But again, he maintained that he told plaintiff to see a periodontist. He did not recommend a root canal for tooth No. 14 because he thought the tooth would be lost to periodontal disease — which it eventually was. He said he never discussed with plaintiff doing a root canal on any of her teeth. He further stated that as of 1984, he saw no hole in tooth No. 14. Dr. Faget explained tooth No. 13, which showed a cavity in a 1982 X-ray and allegedly the same decay in the 1986 X-ray by Dr. Gruner, by stating that he filled it and it had apparently gotten larger by 1986.
He admitted that he could not think of one specific dental treatment offered by him that plaintiff refused. He further admitted that she never refused any treatment for financial reasons, although she did take a long time to pay for a crown. Dr. Faget ended his testimony on re-direct examination by stating that he believed the lack of good oral hygiene on plaintiffs part caused her dental problems.
*394 Mrs. Audrey Faget acted as her husband's office manager. She testified that it was standard practice in her husband’s office for her to make the next appointment with the patient before she left the office. Mrs. Faget stated that plaintiff visited Dr. Faget “mostly on an emergency basis.” She said plaintiff did not come in on a regular basis. She could not recall whether she told plaintiff that she should come in for a cleaning during the two year period, 1984 to 1986, during which plaintiff came in four times for treatment.
At the time of trial, June 1990, plaintiff, Carmel Vila, was 62 years old. She had been a school teacher for twenty years and taught 6th, 7th and 8th grade English. She said she had been treated by a dentist throughout her life, and would go for a visit approximately once a year. She said her mouth was in good condition when she went to see Dr. Faget. She maintained that she had never had problems with mobile teeth, or sore or bleeding gums, prior to her treatment from Dr. Faget. She first went to Dr. Faget for treatment of a problem. She said she requested an appointment to have her teeth cleaned. According to plaintiff, Dr. Faget had no recall system. She said his wife did not make an appointment with her before she left the office that first day. The only follow-up appointments made were for treatment if there was anything discovered during a treatment.
Plaintiff said about “a year or two” after she began seeing Dr. Faget her mouth started bleeding and her “teeth became sore.” From then on she said she suffered from bleeding gums and sore teeth. She testified that Dr. Faget kept saying “I’ll take care of it. You don’t have to worry about it.” She recalled him telling her that people over 35 years old usually developed gum disease and eventually lost their teeth, and that was what she could expect. She said he never recommended that she see a periodontist, instead he said that he was doing everything that a periodontist could do, so she did not have to worry. She stated that he said the only treatment was brushing and taking care of her teeth. She said during her period of treatment by Dr. Faget she was brushing her teeth two or three times a day. Three years after starting to see Dr. Faget, she said she began to notice that her teeth were becoming loose. Dr. Faget told her he was doing all that he could. She said she never turned down any treatment recommended by Dr. Faget for financial reasons. Finally, after experiencing bleeding gums and mobile teeth, a fellow teacher suggested that she see Dr. Gruner.
She said Dr. Gruner cured her bleeding gums and in three or four months stabilized her mobile teeth. She said she hasn’t had bleeding gums, loose teeth or infections [abscesses] since about the third or fourth month after she began to see Dr. Gruner. Plaintiff testified that Dr. Faget never told her to floss. She also stated that she didn’t know before going to Dr. Faget that she was supposed to floss. In other words, although she had been going to dentists her whole life, none of them had told her to floss.
This was the evidence adduced at trial on the issue of Dr. Faget’s negligence. Our review of the trial court judgment on the issue of Dr. Faget’s negligence is limited. The applicable standard of appellate review in civil cases was recently set forth and elaborated on by the Louisiana Supreme Court in Rosell v. ESCO, 549 So.2d 840 (La.1989). In that case the court stated:
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by a reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting *395 as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous-clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of facts’ findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
(Citations and footnotes omitted)
In the instant case the trial court made several clearly wrong factual assertions in its reasons for judgment.[2] However, our review of the record is concerned with the trial court’s ultimate finding of fact — that Dr. Faget’s treatment of plaintiff met the applicable standard of care and that he was therefore not negligent. We must determine whether the judgment of the trial court — not its reason for judgment — was clearly wrong.
As previously mentioned, plaintiff concentrated on several areas of treatment to prove that Dr. Faget’s treatment fell below the applicable standard of care. First, she maintained Dr. Faget did not take an adequate medical history when she first came to him for treatment. Dr. Faget testified that he took a verbal medical history but that he only writes contraindications or unusual things affecting treatment, as opposed to taking a general written history which is maintained in plaintiff’s record. He said there was nothing to write down on plaintiff. Dr. Faget did not take a written history. It is a credibility call as to whether Dr. Faget took any medical history at all. The trial court could have accepted the testimony of Dr. Faget. Dr. Conzelmann testified that it met the *396 standard of care to take only an oral medical history and record only abnormalities. There was no testimony that it is below the applicable standard of care to take only an oral medical history. Moreover, there is no evidence that the plaintiff suffered any injury because Dr. Faget took an oral history. We are unable to say the trial court would have been clearly wrong in determining there was no negligence on Dr. Faget’s part relating to the medical history issue.
Plaintiff also alleged that Dr. Faget was negligent in failing to have an adequate recall or scheduling system for appointments. Dr. Faget and his wife testified that patients were asked to make an appointment on their way out of the office. Plaintiff testified that this was not done. This is another credibility call. Dr. Cavalli-no testified that this policy was adequate. While Dr. Cavallino did not parrot the words “this complies with the applicable standard of care,” it was clearly his opinion that the policy met at least minimum standards. Again, there was no conclusive causal connection established between Dr. Faget’s policy of making appointments and any damage sustained by plaintiff.
Plaintiff also faults Dr. Faget’s instructions on dental hygiene. Plaintiff maintains that he did not instruct her to floss at all, and did not instruct her by demonstration on how to properly brush. She said he simply told her to brush her teeth. Dr. Faget testified that he instructed plaintiff to brush and floss. He emphasized to plaintiff the importance of proper dental hygiene. Based upon a reasonable evaluation of credibility, the trial court could have found that Dr. Faget told plaintiff to brush and floss. Dr. Cavallino testified that, at a minimum, a dentist should tell a patient to brush and floss. This complies with the applicable standard of care.
There was some question whether Dr. Faget had developed a “treatment plan” for plaintiff. Dr. Gaffney, the dentist who served on the medical review panel and who subsequently changed his mind as to whether Dr. Faget was negligent, testified that the failure to have a treatment plan was below the applicable standard of care. The evidence shows that Dr. Faget’s records contained no written treatment plan for plaintiff. However, Dr. Faget testified that he had a treatment plan, but did not record it. Dr. Conzelmann testified that he did not use a printed treatment plan. Therefore, accepting Dr. Faget’s testimony, and that of Dr. Conzelmann, it cannot be said that the trial court would have been clearly wrong in finding that he met the applicable standard of care by not using a written treatment plan.
The decisive factor regarding Dr. Faget’s treatment of plaintiff’s periodontal disease is the credibility of Dr. Faget versus that of plaintiff. As evidenced by the trial court’s reasons for judgment, and the judgment itself, the trial court found Dr. Faget more credible than plaintiff. Despite the record evidence that seems to show that Dr. Faget did not have a full grasp of periodontal disease, and that he probably failed to either diagnose the disease in plaintiff, or to diagnose and convey to plaintiff the seriousness of the problem, we cannot say that the trial court was clearly wrong in finding Dr. Faget more credible than plaintiff and accepting his testimony that he diagnosed the problem and recommended that she see a periodontist. We are not free to simply substitute our judgment for that of the trial court.
Other than the testimony of plaintiff, the evidence also fails to furnish a basis for a finding that the periodontal disease itself was caused by Dr. Faget’s negligent treatment. Plaintiff freely admitted that she had never been told to floss and presumably had never before in her life flossed, this despite her testimony that she had received dental treatment her whole life. She also maintained that she had never been told how to brush her teeth correctly. Again, she had apparently been brushing incorrectly her whole life. While the periodontal disease manifested itself during the period plaintiff was being treated by Dr. Faget, accepting the testimony of Dr. Fag-et as to his treatment, it cannot be said that it was established that the disease was the result of his treatment or lack thereof.
*397 Finally, we are unable to say the trial court was clearly wrong in finding that plaintiff otherwise failed to prove that Dr. Faget’s treatment fell below the applicable standard of care.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.

. La.R.S. 40:1299.41 et seq.

. The evidence does not support the trial court’s finding that Dr. Cavallino testified that Dr. Fag-et met the applicable standard of care. While Dr. Cavallino, the pediatric dentist who testified on behalf of defendant, may have testified that Dr. Faget’s treatment of plaintiff met the applicable standard of care in some respects, i.e., hygiene instruction and his method of making follow-up appointments, he did not testify that Dr. Faget’s diagnosis and treatment of plaintiffs periodontal disease met the applicable standard of care. Dr. Cavallino’s testimony was directed to establishing that Dr. Faget adequately instructed plaintiff on dental hygiene, that he had an adequate recall system for making appointments with patients, and that plaintiff was a “bad patient,” i.e., that she did not have good dental health practices insofar as coming in for prophylactic cleanings and examinations. Dr. Cavallino admitted in his deposition that he "would feel unqualified and incompetent to examine the X-rays of [plaintiff] and comment on those." The testimony of the other dental experts who addressed Dr. Faget’s diagnosis and treatment of — or failure to diagnose and treat— plaintiffs periodontal disease all examined and commented on the X-rays.
In its reasons for judgment the trial court also stated that Dr. Cavallino based his opinion partly on plaintiffs having refused treatment recommended by Dr. Faget on economic grounds. This is incorrect and not supported by the record. Dr. Faget admitted on re-cross examination that plaintiff had never refused even one treatment offered by him for financial reasons. She did take a while to pay for a crown but she eventually paid for it. The court also cited as fact, plaintiffs alleged testimony that Dr. Faget mentioned that “she might want to consult a periodontist but that he stopped short of recommending that treatment.” There is nothing in the record to support this finding of fact. Plaintiff testified that Dr. Faget never recommended that she see a periodontist. She said nothing about Dr. Faget mentioning that she “might” want to consult a periodontist.